# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT

         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

          HONORABLE OTIS D. WRIGHT, II, U.S. DISTRICT JUDGE


 NICOLE JUAREZ ZELAYA, individually and )
 as Successor-in-Interest to Decedent   )
 JACOBO JUAREZ CEDILLO,                 )
                                        )
                  Plaintiff,            )
                                        )
       v.                               )   Case No.
                                        )   CV 20-8382 ODW (MAAx)
 CITY OF LOS ANGELES, DUSTIN RICHMOND,  )
 and JOSEPH HUNT,                       )   Volume 2
                                        )   (Pages 86 - 176)
                  Defendants.           )
 _____)



             REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS
                TRIAL DAY ONE:   AFTERNOON SESSION
                    TUESDAY, OCTOBER 10, 2023
                            1:36 P.M.
                     LOS ANGELES, CALIFORNIA




 _____

        MYRA L. PONCE, CSR 11544, CRR, RPR, RMR, RDR
              FEDERAL OFFICIAL COURT REPORTER
              350 WEST 1ST STREET, ROOM 4455
              LOS ANGELES, CALIFORNIA  90012
                     (213) 894-2305
```

|  |  |  |
|---|---|---|
| | 1 | corner of Woodman and Sherman Way? |
| | 2 | A.   Yes.  Woodman Avenue and Sherman Way. |
| | 3 | Q.   And your partner that night was Officer Hunt? |
| | 4 | A.   Yes, sir. |
| 03:08PM | 5 | Q.   And you first observed Mr. Cedillo about 4:10 in the |
| | 6 | morning? |
| | 7 | A.   Approximately. |
| | 8 | Q.   Who was driving the car? |
| | 9 | A.   My partner, Officer Hunt. |
| 03:08PM | 10 | Q.   You were on your way at that point to another call? |
| | 11 | A.   That is correct. |
| | 12 | Q.   And you observed Mr. Cedillo at some point sitting |
| | 13 | in the driveway area of the gas station? |
| | 14 | A.   Correct. |
| 03:08PM | 15 | Q.   And there was some discussion between you and your |
| | 16 | partner, and you decided to make contact with Mr. Cedillo? |
| | 17 | A.   Correct. |
| | 18 | Q.   And where did you pull your patrol vehicle? |
| | 19 | A.   We pulled our patrol vehicle to the north curb of |
| 03:08PM | 20 | Sherman Way, just east of Woodman Avenue. |
| | 21 | Q.   And you had a body-worn camera on your person? |
| | 22 | A.   I did. |
| | 23 | Q.   And it was activated during your contact with |
| | 24 | Mr. Cedillo? |
| 03:09PM | 25 | A.   It was. |

**UNITED STATES DISTRICT COURT**

|          |    |                                                                  |
|----------|----|------------------------------------------------------------------|
|          | 1  | Q.   Now, had you received any call for service regarding        |
|          | 2  | Mr. Cedillo, in other words, someone complaining that he was     |
|          | 3  | bothering someone, had committed some crime, something like     |
|          | 4  | that?                                                            |
| 03:09PM  | 5  | A.   No.                                                         |
|          | 6  | Q.   When you saw him initially sitting there in the             |
|          | 7  | driveway, did it look to you as if he was involved in a fight    |
|          | 8  | or a disturbance with another person at that time?               |
|          | 9  | A.   No.                                                         |
| 03:09PM  | 10 | Q.   Did it look to you like he was committing a crime           |
|          | 11 | when you first saw him sitting there?                            |
|          | 12 | A.   No.                                                         |
|          | 13 | Q.   And when you went up to contact him, you initially          |
|          | 14 | handcuffed him; is that correct?                                 |
| 03:09PM  | 15 | A.   That's correct.                                             |
|          | 16 | Q.   And would you agree, at the time you handcuffed him,        |
|          | 17 | you had no probable cause to arrest him at that point?           |
|          | 18 | A.   That's correct.                                             |
|          | 19 | Q.   And would you at least agree that he initially              |
| 03:10PM  | 20 | appeared compliant?                                              |
|          | 21 | A.   Correct.                                                    |
|          | 22 | Q.   And your assessment of him was that he may have been        |
|          | 23 | under the influence of drugs or have a mental illness or both;   |
|          | 24 | is that fair?                                                    |
| 03:10PM  | 25 | A.   Fair.                                                       |

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | A.   It was probably more than 30 seconds.                             |
|       | 2  | Q.   Do you know if it was more than a minute?                         |
|       | 3  | A.   I don't recall.                                                   |
|       | 4  | Q.   Well, you've looked at the body-worn camera footage               |
| 03:25PM | 5 | in anticipation of this trial, haven't you?                            |
|       | 6  | A.   I have.                                                           |
|       | 7  | Q.   And you've also looked at dash cam footage; correct?              |
|       | 8  | A.   I have.                                                           |
|       | 9  | Q.   And surveillance video?                                           |
| 03:25PM | 10 | A.   Correct.                                                         |
|       | 11 | Q.   And you have no estimate as to how much time passed               |
|       | 12 | from him being hobbled to you putting him in a recovery                |
|       | 13 | position?                                                              |
|       | 14 | A.   I don't recall the amount of time that that was, no.              |
| 03:26PM | 15 | Q.   Okay.  Would you be surprised if it was more than a              |
|       | 16 | minute?                                                                |
|       | 17 | A.   No.                                                               |
|       | 18 | Q.   Now, at some point after this prone restraint was                 |
|       | 19 | taking place and after he was hobbled and after you kept him           |
| 03:26PM | 20 | chest down for some period of time after he was hobbled, your         |
|       | 21 | observations were he stopped resisting; correct?                       |
|       | 22 | A.   Correct.                                                          |
|       | 23 | Q.   He stopped moving; correct?                                       |
|       | 24 | A.   He stopped resisting.                                             |
| 03:26PM | 25 | Q.   And he stopped moving?                                           |

**UNITED STATES DISTRICT COURT**

```
 1        A.   He stopped resisting.  He stopped actively kicking,
 2   jerking, trying to roll.
 3        Q.   I'm asking you a different question, sir.  I get
 4   that he stopped resisting.  I'm asking you now:  Did he stop
 5   moving?
 6        A.   I don't recall him stopping completely moving.
 7        Q.   You don't recall that?
 8        A.   No.
 9        Q.   Do you recall that he stopped talking?
10        A.   Yes.
11        Q.   Okay.  So you at least recall that he stopped
12   resisting and stopped talking or making auditory noises.  Is
13   that fair?
14        A.   Fair.
15        Q.   Okay.  And he stopped lifting up or trying to roll;
16   true?
17        A.   True.
18        Q.   And so you and your partner finally put him on his
19   side, his right side; correct?
20        A.   Correct.
21        Q.   Now, when he's on his right side, he's still
22   handcuffed behind his back; true?
23        A.   True.
24        Q.   And he's still hobbled?
25        A.   Correct.
```

```
03:31PM   1        A.   That was my understanding.
          2        Q.   And, in fact, Nuñez at some point requested for
          3   medical to come; correct?
          4        A.   Yes.
03:31PM   5        Q.   And do you recall -- and I know you've listened to
          6   the tapes recently.  Do you recall Nuñez when he requested
          7   medical, indicating they had one unconscious, using the word
          8   "unconscious"?
          9        A.   I don't recall that, no.
03:31PM  10        Q.   So -- and it was about 11-and-a-half minutes.  Do I
         11   have that time frame correct?
         12        A.   Eleven --
         13        Q.   From -- from him stopping resisting and you putting
         14   him on his side to the paramedics actually getting to him.
03:32PM  15        A.   Yes.
         16        Q.   And the paramedics you saw at some point initially
         17   talking to him with no response; correct?
         18        A.   Yes.
         19        Q.   And then one of the paramedics started to shake his
03:32PM  20   shoulder?
         21        A.   Yes.
         22        Q.   And when the paramedic started to shake his
         23   shoulder, Mr. Cedillo's still handcuffed and hobbled; true?
         24        A.   True.
03:32PM  25        Q.   And according to you, he had been sleeping for about
```

```
03:32PM

03:33PM

03:33PM

03:33PM

03:33PM
```

1   11-and-a-half minutes?
2       A.   Yes.
3       Q.   And then he came to; correct?  Started yelling,
4   moving?
5       A.   Yes.
6       Q.   And is it true, sir, within about one or two seconds
7   after he came to, after being shaken by the paramedic, you put
8   him back chest down?
9       A.   It was quick.  I don't remember if it was one, two
10  seconds, five seconds.  It was quick.
11      Q.   Would you agree, sir, it was less than five seconds?
12      A.   Probably.
13      Q.   And you didn't have any physical injury in this
14  incident, did you?
15      A.   No.
16      Q.   So now I want to talk to you about the second prone
17  restraint.  So this would be after he was, according to you,
18  sleeping for 11-and-a-half minutes and awoken and within less
19  than five seconds you put him chest down again.  I want to talk
20  about that time period.  Okay?
21      A.   Yes, sir.
22      Q.   You got on his back again; correct?
23      A.   Can you clarify what you mean by "got on his back"?
24      Q.   You had this time -- instead of your chest on his
25  back for about four minutes or so in the first restraint, in

1  the second restraint you put both of your knees on his back;
2  true?
3      A.   That's correct.
4      Q.   And in the second prone restraint, you were applying
5  weight and downward pressure; is that correct?
6      A.   Correct.
7      Q.   And while you were doing that, did you have a firm
8  grip on him somewhere?
9      A.   Not that I recall.
10     Q.   And you would agree, with your knees on his back,
11 you were applying body weight?
12     A.   Yes.
13     Q.   And, in fact -- and he was still facedown; correct?
14     A.   Correct.
15     Q.   Still on his stomach; correct?
16     A.   Correct.
17     Q.   And you were on the upper portion of his back; is
18 that also correct?
19     A.   I had one knee on the upper portion of his back.
20     Q.   In fact, which knee did you have on his upper back?
21     A.   I believe it was my right knee.
22     Q.   And which knee did you have on his lower back?
23     A.   That would be my left knee.
24     Q.   So both knees on his back, one on the upper back,
25 one on the lower back?

**UNITED STATES DISTRICT COURT**

|         |    |                                                                        |
|---------|----|------------------------------------------------------------------------|
|         | 1  | A.   That's my recollection, yes.                                      |
|         | 2  | Q.   And it's still your understanding that your partner               |
|         | 3  | was controlling his legs?                                              |
|         | 4  | A.   Yes.                                                              |
| 03:35PM | 5  | Q.   And you're still applying downward pressure;                      |
|         | 6  | correct?                                                               |
|         | 7  | A.   I am.                                                             |
|         | 8  | Q.   And I think we talked about this in your deposition,              |
|         | 9  | that you would agree that the majority of your weight was              |
| 03:35PM | 10 | distributed on his back?                                               |
|         | 11 | A.   At times.                                                         |
|         | 12 | Q.   And at times, you placed the majority of your weight              |
|         | 13 | on his back; true?                                                     |
|         | 14 | A.   At times, yes.                                                    |
| 03:35PM | 15 | Q.   And in that -- during that second prone restraint,                |
|         | 16 | were there time frames when you felt he was trying to lift up?         |
|         | 17 | A.   Lift up and roll, yes.                                            |
|         | 18 | Q.   And you, once again, were trying to prevent him from              |
|         | 19 | doing that; correct?                                                   |
| 03:36PM | 20 | A.   Correct.                                                          |
|         | 21 | Q.   And to prevent him from doing that, you would apply               |
|         | 22 | more weight and more downward pressure; true?                          |
|         | 23 | A.   True.                                                             |
|         | 24 | Q.   And that cycle went on for some time, him trying to               |
| 03:36PM | 25 | lift up, you applying more weight and downward pressure, until         |

          1  eventually he stopped trying to lift up.  Is that fair?
          2       A.   Fair.
          3       Q.   Now, he also stopped, once again, making noises or
          4  sounds; true?
03:36PM   5       A.   True.
          6       Q.   And he stopped, meaning Mr. Cedillo, making noises
          7  and sounds while he was chest down during that second prone
          8  restraint?
          9       A.   Sorry.  Say the first part again.
03:37PM  10       Q.   Sure.
         11            You already told us that he started making -- he
         12  stopped making sounds and stopped resisting at the end of the
         13  first prone restraint; correct?
         14       A.   Correct.
03:37PM  15       Q.   Now I'm talking about the second prone restraint.
         16  At some point did he stop resisting?
         17       A.   Yes.
         18       Q.   At some point did he stop making sounds?
         19       A.   Yes.
03:37PM  20       Q.   And your recollection is that he stopped making
         21  sounds at about the time he stopped moving?
         22       A.   At the time he stopped resisting.
         23       Q.   Well, you recall indicating that he also stopped
         24  moving at about that time?
03:37PM  25       A.   I don't recall him completely ever stop moving.

|  |  |
|---|---|
| 1 | his face.  Is that fair? |
| 2 | A.    Sure. |
| 3 | MR. GALIPO:  Continue, please. |
| 4 | (Videotape played, not reported.) |
| 04:16PM  5 | Q.    (BY MR. GALIPO:)  Do you see him moving at all now? |
| 6 | A.    Not in this frame, no. |
| 7 | (Videotape played, not reported.) |
| 8 | Q.    (BY MR. GALIPO:)  Is that you saying something to |
| 9 | one of the sergeants? |
| 04:17PM 10 | A.    Yes. |
| 11 | Q.    Can you hear -- |
| 12 | MR. GALIPO:  Can we go back just a little bit?  Is |
| 13 | that possible? |
| 14 | (Videotape played, not reported.) |
| 04:17PM 15 | Q.    (BY MR. GALIPO:)  Could you hear what you said? |
| 16 | A.    I said something about rolling him real quick. |
| 17 | Q.    Okay. |
| 18 | (Videotape played, not reported.) |
| 19 | MR. GALIPO:  That, I believe, concludes 21B. |
| 04:18PM 20 | May I consult with my colleagues for a moment? |
| 21 | (Off-the-record discussion among counsel.) |
| 22 | MR. GALIPO:  And lastly, for the videos, Your Honor, |
| 23 | and with agreement of counsel, we have a composite video that |
| 24 | has been put together and agreed upon.  It's Exhibit 23 that |
| 04:19PM 25 | has four boxes and everything synchronized to the same time. |

**UNITED STATES DISTRICT COURT**

|  |  |  |
|---|---|---|
|  | 1 | (Exhibit 23 for identification.) |
|  | 2 | MR. GALIPO:  We're going to try to queue it up to |
|  | 3 | about the time of the takedown and just play it. |
|  | 4 | And, of course, we'll cut out -- we won't play the |
| 04:19PM | 5 | whole 11-and-a-half minutes in between.  But this will give the |
|  | 6 | jury at least the four videos. |
|  | 7 | If we can queue that up, please. |
|  | 8 | (Videotape played, not reported.) |
|  | 9 | THE COURT:  Stop this.  Stop. |
| 04:22PM | 10 | MR. GALIPO:  Okay.  Stop.  That's enough for now. |
|  | 11 | Q.    (BY MR. GALIPO:)  I have one more question of you, |
|  | 12 | Officer, and I think this was asked of you at your deposition. |
|  | 13 | If you knew at the time of the incident what you know now about |
|  | 14 | the risk of prone restraint, would you have done anything |
| 04:22PM | 15 | differently? |
|  | 16 | MR. HURRELL:  Objection. |
|  | 17 | THE WITNESS:  No. |
|  | 18 | MR. HURRELL:  That calls for speculation. |
|  | 19 | MR. GALIPO:  He answered in his deposition. |
| 04:22PM | 20 | THE COURT:  The answer will stand. |
|  | 21 | THE WITNESS:  No. |
|  | 22 | MR. GALIPO:  That's all I have.  Thank you, |
|  | 23 | Your Honor. |
|  | 24 | THE COURT:  Let's call it a day. |
| 04:23PM | 25 | I understand we're going to start again at |

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )

      I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

      DATED THIS 29TH DAY OF NOVEMBER, 2023.


      /S/ MYRA L. PONCE
_____
MYRA L. PONCE, CSR NO. 11544, CRR, RDR
FEDERAL OFFICIAL COURT REPORTER