**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel.:   (818) 347-3333; Fax:     (818) 347-4118

**CARRILLO LAW FIRM, LLP**
Luis A. Carrillo, Esq. (SBN 70398)
Lac4justice@gmail.com
Michael S. Carrillo, Esq. (SBN 258878)
mc@carrillofirm.com
1499 Huntington Dr., Suite 402
South Pasadena, CA 91030
Tel.:   (626) 799-9375; Fax:     (626) 799-9380

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE JUAREZ ZELAYA, Individually and as Successor-in-Interest to Decedent JACOBO JUAREZ CEDILLO;<br><br>              Plaintiff,<br><br>      v.<br><br>CITY OF LOS ANGELES; DUSTIN RICHMOND; JOSEPH HUNT,<br><br>              Defendants. | Case No.: 2:20-cv-08382-ODW-MAA<br><br>*Assigned to:*<br>Hon. Otis D. Wright, II<br>Hon. Mag. Maria A. Audero<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Declarations and Exhibits thereto; Proposed Order filed concurrently herewith*]<br><br>Date:   January 29, 2024<br>Time:   1:30 p.m.<br>Crtrm: 5D |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

     **PLEASE TAKE NOTICE** that on January 29, 2024, at 1:30 p.m., or as soon

thereafter as is practicable for this Honorable Court, located at 350 West 1st Street,

Los Angeles, CA, 90012, Courtroom 5D, Plaintiff, Nicole Zelaya, will and hereby does move this Court for an Order awarding reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988.

In addition to requesting compensation for their time spent in litigating this case, bringing it to trial, and opposing Defendant City of Los Angeles' motion for a new trial, Plaintiff is also requesting compensation for their counsels' time necessarily spent in drafting this motion, the anticipated reply brief, supplemental and/or amended briefs, as well as time spent preparing for and attending any hearings on the motion for attorneys' fees.  This Motion is based on grounds that the Plaintiff, Nicole Zelaya, was the prevailing party at trial on her 42 U.S.C. § 1983 claim, and is entitled to statutory attorneys' fees as a matter of law.

**Statement of Local Rule 7-3 Compliance**: This motion is made following discussions between counsel for the parties, wherein the parties agreed to a briefing schedule regarding Plaintiff's anticipated motion for attorney fees. The parties were unable to resolve the matter prior to the filing of this motion.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the declarations and exhibits to be filed with the anticipated amended and/or supplemental Motion for Attorneys' Fees, the pleadings on file herein, and such other oral and documentary evidence as may be presented at the time of the hearing.

DATED: December 15, 2023          LAW OFFICES OF DALE K. GALIPO
                                  CARRILLO LAW FIRM, LLP

                                  */s/     Renee V. Masongsong*
                                  Dale K. Galipo
                                  Michael Carrillo
                                  Renee V. Masongsong
                                  Attorneys for Plaintifff

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES................................................1

I.   INTRODUCTION........................................................................................1

II.  PLAINTIFF IS ENTITLED TO FEES UNDER § 1988 ...........................1
     A.  Legislative History of 42 U.S.C. § 1988 ........................................1
     B.  The Supreme Court's Standard in *Hensley v. Eckerhart*................3
     C.  Plaintiff Is the Prevailing Party......................................................4

III. PLAINTIFF'S "LODESTAR" IS APPROPRIATE AND REASONABLE ......5
     A.  Counsels' Hours Are Reasonable given the Time and Labor Required and
     Preclusion from Other Employment. ..................................................6
     B.  Skill Necessary to Perform Proper Legal Services given the Complexity and
     Undesirability of the Case, and Risk of Non-Payment. ......................9
     C.  Counsel's Hourly Rates Are Reasonable Considering the Customary Fee,
     Contingency Basis, Experience and Reputation, and Awards in Similar Cases.10
        1.   Hourly Rate for Dale K. Galipo.............................................11
        2.   Hourly Rate for Renee V. Masongsong ..................................13
        3.   Hourly Rate for Michael Carrillo ..........................................14
        4.   Hourly Rate for Miguel Flores ..............................................15
        5.   Hourly Rate for John Fattahi ................................................15
        6.   Hourly Rate for Benjamin Levine ..........................................16
     D. Plaintiff is Entitled to Fees for Litigating the Instant Motion.......16

IV.  CONCLUSION..........................................................................................16

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Arizona v. ASARCO LLC*,
   773 F.3d 1050 (9th Cir. 2014)..............................................................9

*Ballen v. City of Redmond*,
   466 F.3d 736 (9th Cir. 2006)...............................................................12

*Beaty v. BET Holdings, Inc.*,
   222 F.3d 607 (9th Cir. 2000)...............................................................13

*Blum v. Stenson*,
   465 U.S. 886 (1984) ....................................................................12, 17

*Bouman v. Block*,
   940 F.2d 1211 (9th Cir. 1991).............................................................10

*Brewster v. Dukakis*,
   786 F.2d 16 (1st Cir. 1986) ................................................................10

*Burlington v. Dague*,
   505 U.S. 557 (1992) ..........................................................................12

*Camacho v. Bridgeport Financial, Inc.*,
   523 F.3d 973 (9th Cir. 2018)...............................................................18

*Chavez v. City of Los Angeles*,
   47 Cal. 4th 970 (2010).......................................................................11

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986) ....................................................................10, 17

*Clark v. City of Los Angeles*,
   803 F.2d 987 (9th Cir. 1986)...............................................................23

*Collins v. Chandler Unified Sch. Dist.*,
   644 F.2d 759 (9th Cir. 1981).................................................................9

*Dang v. Cross*,
   422 F.3d 800 (9th Cir. 2005)...............................................................17

*Davis v. City & County of San Francisco*,
   976 F.2d 1536 (9th Cir. 1992).............................................................11

*Dennis v. Chang*,
   611 F.2d 1302 (9th Cir. 1980)...............................................................9

*Estate of Diaz v. City of Anaheim*,
   840 F.3d 592 (9th Cir. 2016)...............................................................15

*Fair Housing of Marin v. Combs*,
   285 F.3d 899 (9th Cir. 2002)...............................................................11

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ..........................................................................12

*Fish v. St. Cloud State Univ.*,
    295 F.3d 849 (8th Cir. 2002)................................................................17

*Garcia v. Los Angeles Cnty. Sheriff's Dep't*,
    No. CV 09-8943 MMM (SHX), 2015 WL 13646906 (C.D. Cal. Sept. 14,
    2015).....................................................................................................17

*Gates v. Deukmjian*,
    987 F.2d 1392 (9th Cir. 1992)......................................................11, 17

*Glass v. Pfeffer*,
    849 F.2d 1261 (10th Cir. 1988)............................................................23

*Gregory v. Oliver*,
    2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) ........................................15

*Guam Society of Obstetricians & Gynecologists v. Ada*,
    100 F.3d 691 (9th Cir. 1996)................................................................10

*Hall v. Cole*,
    412 U.S. 1 (1973) ..................................................................................9

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ......................................................................10, 11

*Hernandez v. George*,
    793 F.2d 264 (10th Cir. 1986)..............................................................23

*Hernandez v. Kalinowski*,
    146 F.3d 196 (3rd Cir. 1998)...............................................................23

*Hiken v. Dep't of Def.*,
    836 F.3d 1037 (9th Cir. 2016)..............................................................18

*Horsford v. Bd. Of Trustees of Cal. State Univ.*,
    132 Cal. App. 4th 359 (2005)...............................................................14

*Jordan v. Multnomah Cnty.*,
    815 F.2d 1258 (9th Cir. 1987)..............................................................13

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975)..................................................................13

*Ketchum v. Moses*,
    24 Cal.4th 1122 (2001).................................................................12, 13

*Lund v. Affleck*,
    587 F.2d 75 (1st Cir.1978) ..................................................................23

*McGrath v. County of Nevada*,
    67 F.3d 248 (9th Cir. 1995)..................................................................12

*McKibben v. McMahon*,
    2019 WL 1109683 (C.D. Cal. Feb. 28, 2019).....................................17

*Mendez v. County of San Bernardino*,
    540 F.3d 1109 (9th Cir. 2009)................................................................9

*Moore v. James H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) ...................................................... 13

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) .............................................. 14, 18

*National Ass'n of Corder v. Gates*,
    688 F. Supp. 1418 (C.D. Cal. 1988) ............................................ 11

*Odima v. Westin Tucson Hotel*,
    53 F.3d 1484 (9th Cir. 1995) ...................................................... 10

*Parker v. Vulcan Materials Co. Long Term Disability Plan*,
    No. EDCV 07–1512 ABC (OPx), 2012 WL 843623 (C.D. Cal. Feb. 16, 2012)
    ........................................................................................................ 18

*Peak-Las Positas Partners v. Bollag*,
    171 Cal. App. 4th 101 (2009) ...................................................... 14

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*,
    163 Cal. App. 4th 550 (Cal. Ct. App. 2008) ................................ 15

*Prison Legal News v. Schwarzenegger*,
    608 F.3d 446 (9th Cir. 2010) ...................................................... 17

*Ramon v. County of Santa Clara*,
    173 Cal. App. 4th 915 (Cal. Ct. App. 2009) ................................ 13

*Roberts v. City of Honolulu*,
    938 F.3d 1020 (2019) .................................................................. 18

*Schwarz v. Secretary of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) ........................................................ 11

*Serrano v. Unruh*,
    32 Cal. 3d 621 (1982) .......................................................... 10, 17

*Sethy v. Alameda County Water Dist.*,
    602 F.2d 894 (9th Cir. 1979) ........................................................ 9

*Texas Teachers v. Garland School Dist.*,
    489 U.S. 782 (1989) .................................................................... 12

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ........................................................ 17

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ................................................ 13, 17

*Ustrak v. Fairman*,
    851 F.2d 983 (7th Cir. 1988) ...................................................... 11

*Valenzuela v. City of Anaheim*,
    No. SACV1700278CJCDFMX, 2023 WL 2249178 (C.D. Cal. Feb. 23, 2023)
    ........................................................................................................ 19

*Vo v. Las Virgenes Municipal Utility Dist.*,
   79 Cal. App. 4th 440 (2000)........................................................................14

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007)......................................................................17

*Wiersta v. Heffernan*,
   789 F.2d 968 (1st Cir. 1986) ......................................................................15

*Wilson v. Union Pacific R. Co.*,
   56 F.3d 1226 (10th Cir. 1995).....................................................................15


<u>Statutes</u>

42 U.S.C. § 1988.............................................................................................8, 11


<u>Other Authorities</u>

Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session,
   reprinted in 1976 U.S. Code Cong. & Ad. News 5908.................................8


<u>Other</u>

1976 U.S.C.C.A.N. 5908 ....................................................................................18

Senate Report No. 94-1011 (1976).....................................................................18

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.      INTRODUCTION**

On October 13, 2023, the jury in this matter reached a verdict against Defendants Dustin Richmond, Joseph Hunt, and the City of Los Angeles, and in favor of Plaintiff, Nicole Zelaya, on her claim for excessive force under 42 U.S.C. § 1983 and the Fourth Amendment. The jury awarded Plaintiff $13.5 million in damages. As the prevailing party, Plaintiff now requests attorneys' fees pursuant to 42 U.S.C. § 1988 in the amount of **$744,521**.  The attorney fee award is justified by the significant verdict in Plaintiff's favor, Plaintiff's counsels' skill and experience in the civil rights field, the difficulties and complexities of this case, the risk assumed by Plaintiff's counsel.  Plaintiff litigated this case for over three years, with diligence and dedication to vindicating Plaintiff's and the decedent's constitutional rights, ultimately culminating in a tremendously favorable result for Plaintiff.  For these reasons and those set forth in detail below and in the declarations of Carol A. Sobel, Dale K. Galipo, Renee V. Masongsong, Michael Carrillo, Miguel Flores, John Fattahi, Benjamin Levine, and Santiago Laurel, Plaintiff's counsels and their legal assistant are highly deserving of the full amount of the attorneys' fees requested herein.

**II.     PLAINTIFF IS ENTITLED TO FEES UNDER § 1988**

**A. Legislative History of 42 U.S.C. § 1988**

The Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. § 1988, was enacted to encourage competent counsel to undertake and enforce civil rights cases by assuring them that if they were successful in vindicating federally protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value.  *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908.  Section 1988 clearly provides that "[i]n

any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

Congress has recognized that "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Id.* at 5910. "[T]he citizen who must sue to enforce the law has little or no money with which to hire a lawyer," thus, "citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Id.* Given this purpose, courts have long established that a court's discretion to deny attorney's fees to a successful civil rights litigant "is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2009), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *see also Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) ("Congress plainly intended that successful Plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

The application for attorneys' fees "must be liberally construed to achieve Congress' purpose to encourage compliance with and enforcement of the civil rights laws." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 (9th Cir. 1981) (citation omitted). Justice Brennan opined that "[n]ot to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose." *Hall v. Cole*, 412 U.S. 1, 13 (1973). The difficulty for citizens to stand up to the police is great, especially considering the disparity in funding. *See id.* "An award in these circumstances serves the purposes of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes." *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

### B. The Supreme Court's Standard in *Hensley v. Eckerhart*

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.  Courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party.  *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991).  "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters."  *Hensley*, 461 U.S. at 435.  Otherwise, attorneys would be discouraged from taking on high risk cases such as this one.  *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal. 3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (Plaintiff cannot be faulted for their thoroughness in pleading related claims).

A full fee is one that encourages the vindication of constitutional and statutory rights through recovery of all time spent on the case, calculated at private market rates.  It must ensure that attorneys are paid for all the time they devote to the litigation.  It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered.  *See City of Riverside v. Rivera*, 477 U.S. 561 (1986).  Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute.  *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986).  Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where 'the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the

> district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)).  Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence.  *See Gates v. Deukmjian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), modified on other grounds (9th Cir. 1993) 984 F.2d 345; *National Ass'n of Corder v. Gates*, 688 F. Supp. 1418, 1422 (C.D. Cal. 1988), aff'd in part and rev'd in part 947 F2d 374 (9th Cir. 1991); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002); *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).

## C. Plaintiff Is the Prevailing Party

Plaintiff is the prevailing party in this litigation, and judgment was entered in Plaintiff's favor on her claim under the Fourth Amendment.  The jury awarded Plaintiff a total of $13.5 million in damages.  *See* Dkt. No. 125.  Under 42 U.S.C. § 1988 and California Civil Code § 52.1(i), civil rights plaintiffs who have prevailed on some significant issue in their litigation are entitled to an award of fees.  *See*, *e.g.*, *Hensley*, 461 U.S. at 433; *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citing *Hensley* and indicating that California law was "consistent" with it).  Once the fee entitlement threshold has been crossed, the prevailing plaintiff's fee award is based upon the lodestar method.  "[T]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."  *Hensley*, 461 U.S. at 435. The appropriate rate is the "market rate," which is demonstrated by the moving party

submitting "satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).  Such a rate "is normally deemed to be reasonable, and is referred for convenience as the prevailing market rate." *Id.*

The Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782, 792 (1989) expressly held that *Hensley* sets forth the appropriate test for determining a plaintiff's prevailing party status.  In determining whether a plaintiff has succeeded on any significant issue in litigation, the *Garland* Court looked at whether the relief on the merits of plaintiff's claim changes the legal relationship between plaintiff and defendant.  Applying this test, the Court in *Farrar v. Hobby,* 506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for any amount modified the defendant's behavior in a way that benefits the plaintiff by forcing the defendant to pay an amount that would otherwise not be paid.  In the foregoing respects, federal and California law are parallel.  Ordinarily, where a case has gone to trial and plaintiff has prevailed, the only significant distinction between the standards for an award of fees under federal or state law is the availability of a multiplier.  *Compare Burlington v. Dague*, 505 U.S. 557, 567 (1992) (generally no fee enhancements), *with Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001) (fee enhancements available where the contingent fee market would support it).

## III.    PLAINTIFF'S "LODESTAR" IS APPROPRIATE AND REASONABLE

"In the Ninth Circuit, the method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).  The lodestar method multiplies the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate.  *Id.* (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995) (quotations omitted).  After computation, courts then assess whether it is necessary to adjust the lodestar figure on the basis of the twelve *Kerr* factors.  *Id.* (citations

omitted).  These twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  "[T]here is a strong presumption" that the lodestar calculation "is a reasonable fee."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 405 (9th Cir. 1990) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

### A. Counsels' Hours Are Reasonable given the Time and Labor Required and Preclusion from Other Employment.

The total number of hours for which Plaintiff's counsel request compensation, to be reflected in their declarations and billing logs, is reasonable.  "Absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (emphasis in original); *see also Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (Attorneys who take FEHA cases "ordinarily . . . can anticipate receiving full compensation for every hour spent litigating a claim." (internal quotations omitted)).  Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery . . . ."  *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted); *see also Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 925 (Cal. Ct. App. 2009).

/ / /

In making that determination, courts must look at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself . . . ." *Vo v. Las Virgenes Municipal Utility Dist.*, 79 Cal. App. 4th 440, 447 (2000); *see also Peak-Las Positas Partners v. Bollag*, 171 Cal. App. 4th 101, 114 (2009) (fees reasonable because of complexity of issues, results obtained, and defendants' aggressive litigation).  As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "inflating their fees," as the payoff is too uncertain.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to *win* the case: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  *Id.*

Counsels' sworn declarations and attached time records filed concurrently herewith document the attorney and legal assistant hours reasonably spent in the successful prosecution of this action.  *See* Galipo Decl., Ex. 1; Masongsong Decl., Ex. 1; Carrillo Decl., Ex. 1; Flores Decl., Ex. 1; Fattahi Decl., Ex. 1; Levine Decl., Ex. 1; Laurel Decl., Ex. 1.  These time records are *prima facie* evidence that counsels' hours were reasonable.  *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.").  Plaintiff's attorneys also have exercised billing judgment in several ways.  Attorney hours that were wholly duplicative, unnecessary, or administrative in nature were either not entered by attorneys during the initial timekeeping process or were reduced during the review of the billing records done for this Motion.

The burden shifts to Defendants to prove that any specific time is unreasonable and "to point to the specific items challenged, with a sufficient

argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008).  Defendants cannot meet that burden.  To the contrary, the hours for which Plaintiff's counsel request compensation were reasonably necessary for the prosecution of Plaintiff's claims for approximately five years.  Plaintiff's counsel had an obligation to be diligent and thorough.  Excessive force cases are extremely difficult given the inherent bias in favor of the police, especially in a case such as this where there was damaging evidence. *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995); *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016).

Defendants' position was that the case had little value, as was reflected in their arguments to the jury.  Thus, Plaintiff's counsel correctly anticipated that the case would have to be tried and took the steps to do so successfully.  That came at a heavy burden and with great risk.  First, Plaintiff bore the burden of proof and persuasion.  This required obtaining and meticulously analyzing all the relevant documents and testimony, retaining numerous experts, and extensive preparation for trial.  Second, Plaintiff's counsel retained a large time and economic commitment for this case.  Mr. Galipo compensated the attorneys and staff at the Law Offices of Dale K. Galipo throughout the approximate 18 months that Mr. Galipo's office litigated this case, and incurred costs without any interim payments from the Plaintiff or guarantee of success at trial.  Likewise, the Carrillo Law Firm compensated its attorneys and staff with no guarantee of recovery.  Plaintiff retained multiple experts, each of whom were crucial to the case.  Plaintiff's counsels' close examination, organization, and analysis of the video recordings, audio recordings, photographs, reports, and transcripts proved worthwhile for the successful result for Plaintiff.

/ / /

### B. Skill Necessary to Perform Proper Legal Services given the Complexity and Undesirability of the Case, and Risk of Non-Payment.

In general, successfully litigating police misconduct cases requires extensive experience and skill and an understanding of issues that are unique to civil rights victims as compared to general civil practice. Even experienced civil rights attorneys have difficulty overcoming the built-in bias favoring the police. The favorable trial result in this case was the product of a tremendous amount of hard work and skill on the part of Plaintiff's counsel in preparing and presenting this case at trial. This is especially true in light of the particular difficulty presented in this case, including Defendants' argument that the decedent, Jacobo Cedillo, was under the influence of methamphetamine and had a pre-existing heart condition, which Defendants argued caused his death. Defendants also presented testimony that the decedent was homeless, lying in the driveway of a gas station, and attempting to kick officers. Plaintiff was required to retain multiple medical experts to dispute Defendants' contention that the drugs, as opposed to their own conduct, caused the decedent's death. Despite all of this negative evidence, Plaintiff's counsel achieved a successful result.

At Plaintiff's counsel's first review of this case, they were aware of the difficulty, risk, and expense in taking this case on a contingency basis. Nevertheless, the attorneys took on this case. Despite the difficult evidence produced in discovery, the Law Offices of Dale K. Galipo associated into this case and Mr. Galipo, as lead trial counsel, ultimately won a favorable verdict for Plaintiff—a testament that truly difficult cases such as this require truly dedicated and highly skilled representation. To succeed, Plaintiff's counsel had to conduct numerous depositions, review hours of audio and video recordings, retain, pay and consult with multiple experts, and spend over one week away from the office at trial. Defendants vigorously defended this case. From the outset, Defendants contended that their LAPD officers acted reasonably, and that their conduct did not cause the decedent's injuries or death.

Defendants' trial arguments showed that they believed they should receive a defense verdict. Thus, Plaintiff's counsel had to litigate well enough to win. "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh*, 32 Cal. 3d 621, 633 (1982).

### C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases.

The "prevailing market rates in the relevant community," in the forum where the district court sits, govern the reasonable hourly rate for computing the lodestar amount. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum*, 465 U.S. at 895); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Within this community, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). "Affidavits of the plaintiffs' attorney . . . and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407. "[C]ourts can also use survey data to evaluate the reasonableness of attorneys' rates." *Garcia v. Los Angeles Cnty. Sheriff's Dep't*, No. CV 09-8943 MMM (SHX), 2015 WL 13646906, at *16 (C.D. Cal. Sept. 14, 2015) (citing *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002)); *McKibben v. McMahon*, 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *Gates*, 987 F.2d at 1405 (9th Cir. 1992). Congress expressly recognized that fees in federal civil rights cases should be comparable to those in complex federal civil litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be

governed by the same standards which prevail in other types of equally complex Federal litigation.'" (citing S. Rep. No. 94-4011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913).

Moreover, the Ninth Circuit has repeatedly held that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2018); *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1045 (9th Cir. 2016) (reversing because "the court simply re-invoked the 2015 rates and added a $30 enhancement, without discussion of why the 2015 rates are an appropriate anchor or why an increase in $30 is reasonable"); *Moreno*, 534 F.3d at 1115 ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate . . . ."); *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024-25 (2019) ("Examining prior fee awards to Holcomb and Beck in the district was not an acceptable substitute for considering the declarations submitted by Holcomb, and explaining why those declarations did or did not establish the prevailing hourly rate in the district.").  Courts also appropriately recognize that rates, and inflation, increase over time. *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice").

### 1.  Hourly Rate for Dale K. Galipo

With 34 years of experience, the majority of which was spent litigating civil rights cases, Mr. Galipo's requested hourly rate of **$1,300** is well within the reasonable range of billing rates for civil rights attorneys in Los Angeles with comparable skill and experience.  Mr. Galipo graduated with a B.B.A. from the

University of Michigan in 1981.  Galipo Decl. ¶ 3.  He attended law school at UCLA from 1981 to 1984.  *Id.*  Since 1991, he has managed his own law firm specializing in major personal injury and wrongful death cases and criminal defense. His practice grew to specialize in police excessive force cases resulting in serious injury and death in about 2002.  *Id.* ¶ 4.

In 2012, Mr. Galipo received the Defender of the Constitution Award from the Inland Empire Chamber of the Federal Bar Association.  *Id.* ¶ 5.  From 2017 to 2023, Mr. Galipo prevailed in twenty-eight jury trials, nearly all of which were civil rights cases.  *Id.* ¶ 18.  In approximately the last twelve years, Mr. Galipo has had approximately fifteen published opinions in civil rights cases, and has argued numerous appellate cases before the Ninth Circuit.  *Id.* ¶ 24.  In 2019, Mr. Galipo was elected to the American College of Trial Lawyers.  *Id.* ¶ 9.  Also in 2019 was also selected to the Inner Circle of Advocates, which is limited to one hundred members nationwide, representing some of the top plaintiff's attorneys in the country.  *Id.* ¶ 8. Further in 2019, Mr. Galipo was chosen by UCLA School of Law to give the Irving H. Green Memorial Lecture to students and faculty.  *Id.* ¶ 10.  Past attorneys who have been honored with this recognition include Johnnie Cochran, Jr. *Id.*  Mr. Galipo has also been invited to speak to the law students at UC Irvine and UCLA on several occasions.  *Id.* ¶ 14.  In 2020, Mr. Galipo was recognized as both CAALA Trial Lawyer of the Year and CAOC Consumer Attorney of the Year.  *Id.* ¶ 11, 12.

Courts within this district have consistently recognized Mr. Galipo as one of the top civil rights attorneys in the area of police misconduct in Los Angeles. *See, e.g., Valenzuela v. City of Anaheim*, No. SACV1700278CJCDFMX, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) ("The Court found that a $1,200 hourly rate, although high, was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation with the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases

since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020."); *Craig v. Cnty. of Orange*, Case No. SACV 17-00491-CJC (KESx), Dkt. 280, at 5-6 (awarding Mr. Galipo an hourly rate of $1,200 because "[w]hen it comes to police excessive force cases, Mr. Galipo continues to be without question at the top of his field."); *Donastorg v. City of Ontario*, Case No. EDCV 18-992 JGB (SPx), 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) ("The Court agrees with the courts that have recognized that, when it comes to police excessive force cases in Los Angeles, Mr. Galipo is without question at the top of his field.") (cleaned up). Mr. Galipo is considered to be one of the top civil rights attorneys in the state and country.  Masongsong Decl. ¶ 9; Levine Decl. ¶ 12.  He has gone to trial and won more cases against the police for excessive force than any attorney in the country.  Masongsong Decl. ¶ 9.  Accordingly, Mr. Galipo's requested hourly rate of $1,300 is reasonable for an attorney with his experience, skill, expertise, and reputation.  Galipo Decl. ¶ 28; Sobel Decl. ¶ 26.

### 2.  Hourly Rate for Renee V. Masongsong

As demonstrated by the declarations of Ms. Masongsong, Mr. Galipo, and Ms. Sobel, Ms. Masongsong's requested hourly rate of **$700** is well within the range of reasonable rates in the current Los Angeles legal market for attorneys of comparable skill and experience.  Sobel Decl. ¶¶ 46-51; Galipo Decl. ¶¶ 29. Ms. Masongsong graduated from Pepperdine School of Law in May 2011 and was admitted to the California Bar in December 2011.  Masongsong Decl. ¶¶ 6, 8.  In April 2013, Ms. Masongsong joined the Law Offices of Dale K. Galipo, where she currently works as a senior associate attorney.  *Id.* ¶ 9.  Since joining Mr. Galipo's firm, she has worked almost exclusively on 42 U.S.C § 1983 civil rights cases involving police excessive force.  *Id*.  Ms. Masongsong is the associate attorney at Mr. Galipo's office assigned to this case and was responsible for the case's day-to-day management, including coordinating with Plaintiff's experts, drafting the pretrial documents, preparing for trial, assisting with the trial, and handling post-trial

1   issues. *Id.* ¶ 15; "Ex. 1" to Masongsong Decl.  Over the past ten years as a civil

2   rights attorney, Ms. Masongsong has managed numerous civil rights cases that

3   resulted in multi-million-dollar verdicts and settlements.  Masongsong Decl. ¶ 14.

4   Ms. Masongsong was awarded an hourly rate of $600 for work performed in 2020

5   and 2021. *French v. City of Los Angeles*, Case No. EDCV 20-00416 JGB (SPx),

6   2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022); "Ex. 2" to Masongsong Decl.

7   Taking into account Ms. Masongsong's additional gained experience since the fee

8   award of $600, Ms. Masongsong's requested hourly rate of $700 is reasonable.

9   Masongsong Decl. ¶¶ 16-19; Galipo Decl. ¶¶ 29, 33; Sobel Decl. ¶¶ 41-46; *see also*

10  *Fleming v. Impax Laboratories, Inc.*, Case No. 4:16-cv-06557 HSG (C.D. Cal.

11  2022) (awarding an hourly rate of $760 to a twelfth-year attorney at a small firm).

12              ### 3.  Hourly Rate for Michael Carrillo

13          Mr. Carrillo's requested hourly rate of **$700** is reasonable.  Mr. Carrillo

14  graduated from Whittier Law School in May, 2008 and was admitted to the

15  California Bar in December 2008. Carrillo Decl. ¶¶ 5, 6.  Mr. Carrillo is currently

16  the managing partner of the Carrillo Law Firm, LLP, in which he oversees the entire

17  practice which includes 5 total attorneys.  *Id*. ¶ 13.  Since taking the bar exam, Mr.

18  Carrillo has worked extensively on civil rights matters including second-chairing a

19  jury a federal civil rights jury trial while waiting on bar exam results.  *Id*. ¶ 7.  Mr.

20  Carrillo was primarily responsible to prepare this case for trial up to the association

21  of the Law Offices of Dale K. Galipo and even following. *Id*. ¶ 19.   Mr. Carrillo has

22  been involved in the depositions, client communication, retaining experts, law and

23  motion work, trial preparation, assisting with the trial, and handling post-trial issues.

24  *Id* ; "Ex. 1" to Carrillo Decl.  Over the past years as a civil rights and sexual abuse

25  attorney, Mr. Carrillo has managed numerous civil rights cases that resulted in

26  multi-million-dollar verdicts and settlements. *Id*. ¶¶  13-18. Taking into account Mr.

27  Carrillo's experience, reputation and comparable skill, Mr. Carrillo's requested

28  hourly rate of $700 is a reasonable rate for an attorney with his experience, skill, and

1   expertise.  Carrillo Decl. ¶¶ 20-22; *see also Fleming*, *supra*.

2   **4.  Hourly Rate for Miguel Flores**

3   The hourly rate of **$700** for J. Miguel Flores is also reasonable.  Mr. Flores

4   participated extensively in the litigation of this matter.  Mr. Flores has been licensed

5   for 18 years and has worked extensively in preparing this matter for trial along with

6   the rest of the litigation team.  Flores Decl. ¶¶ 5, 10.  Mr. Flores has worked

7   extensively with the firm on cases involving civil rights and has gained the skill and

8   expertise in these areas which have included prior noteworthy results as reflected in

9   his declaration.  *Id*. ¶ 8.  Accordingly, the requested hourly rate for Mr. Flores of

10  $700 per hour is a reasonable rate for attorneys with his experience, skill and

11  expertise.  *Id*. ¶ 11.

12  **5.  Hourly Rate for John Fattahi**

13  Following the jury's verdict in this matter, John Fattahi was associated as co-

14  counsel to represent Plaintiff in connection with post-trial motions and any

15  appeals.  Mr. Fattahi is a sole practitioner with 17 years of federal trial and appellate

16  experience, including 15 years litigating police civil rights cases almost

17  exclusively.  Fattahi Decl. ¶ 4.  As demonstrated by the declarations of Mr. Fattahi

18  and Ms. Sobel, Mr. Fattahi's 2023 hourly rate of **$920** is within the range of

19  reasonable rates in the current Los Angeles legal market for attorneys of comparable

20  skill, experience and reputation.  Most recently, Mr. Fattahi was awarded a 2022

21  hourly rate of $850 per hour by Judge Carney in *Valenzuela v. City of*

22  *Anaheim*.  Fattahi Decl. ¶ 4 & Ex. 2.  Mr. Fattahi's background and experience is

23  detailed in his declaration.  Fattahi Decl. ¶¶ 6-7.  Mr. Galipo's declaration provides

24  further support for Mr. Fattahi's reasonable 2023 rate of $920, explaining that on all

25  his major jury verdicts he has Mr. Fattahi directly involved in opposing post-trial

26  motions and defending appeals, and he trusts Mr. Fattahi with that work because of

27  his outstanding skills and abilities.  Galipo Decl. ¶¶ 32, 33.

28  / / /

### 6. Hourly Rate for Benjamin Levine

The hourly rate of $400 requested by Benjamin Levine, is also reasonable. In this case, Mr. Levine participated in trial strategy meetings and assisted with pretrial documents. *Id.* ¶ 10. Mr. Levine has been focusing almost exclusively on civil rights litigation since joining the Law Offices of Dale K. Galipo. *See* Levine Decl. Accordingly, the requested hourly rate of **$400** for Mr. Levine is a reasonable rate for attorneys with their experience, skill, and expertise. *See* Levine Decl.; *see* Galipo Decl. ¶¶ 30, 33; Sobel Decl. ¶¶ 52-54.

### D. Plaintiff is Entitled to Fees for Litigating the Instant Motion

In addition to the attorneys' fees derived from legal work performed in preparing and litigating a case, Plaintiff's counsels are entitled to attorneys' fees for their time spent establishing their right to attorneys' fees in the amount requested, and on all work anticipated in opposing Defendants' motion for a new trial. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee."). Plaintiff's counsel will supplement and amend this instant Motion to include their hours spent on the anticipated reply brief, preparation for and appearance at the related hearing, and in opposing Defendants' motion for a new trial.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court award attorneys' fees in the total amount of **$744,521**. Plaintiff also requests that the Court

award attorneys' fees for work performed in the litigation of the instant motion for attorney fees, including drafting the related reply brief and attending hearing on the motion for attorneys' fees. The table below summarizes the fees requested, including the name of each biller, years of practice if an attorney, the hourly rate, hours claimed, and the total for that biller.  If the person is not an attorney, then the qualifying position of the biller is listed.

| Attorney/Biller | Yrs. Practice | Rate | Hours | Total |
|---|---|---|---|---|
| Dale K. Galipo | 34 | $1,300 | 358 | $465,400 |
| Miguel Flores | 18 | $700 | 26.9 | $18,830 |
| John Fattahi | 17 | $920 | 3.8 | $3,496 |
| Michael Carrillo | 15 | $700 | 128.5 | $89,950 |
| Renee V. Masongsong | 12 | $700 | 211.3 | $147,910 |
| Benjamin Levine | 2 | $400 | 6.5 | $2,600 |
| Santiago Laurel | Leg. Assist. | $220 | 74.25 | $16,335 |
| **Subtotal**: | | | | **$744,521** |

DATED: December 15, 2023    **LAW OFFICES OF DALE K. GALIPO**
**CARRILLO LAW FIRM**

*/s/    Renee V. Masongsong*
Dale K. Galipo
Michael Carrillo
Renee V. Masongsong

## <u>WORD COUNT CERTIFICATION</u>

The undersigned, counsel of record Plaintiff, Nicole Zelaya, certifies that this memorandum of points and authorities contains 5784 words, which complies with the word limit of L.R. 11-6.1.


Dated:        December 15, 2023                    /s/      *Renee V. Masongsong*
                                                   Renee V. Masongsong