LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE JUAREZ ZELAYA, Individually and as Successor-in-Interest to Decedent JACOBO JUAREZ CEDILLO; <br><br> Plaintiff, <br><br> v. <br><br> CITY OF LOS ANGELES; DUSTIN RICHMOND; JOSEPH HUNT, <br><br> Defendants. | Case No.: 2:20-cv-08382-ODW-MAA <br><br> *Assigned to:* <br> Hon. Otis D. Wright, II <br> Hon. Mag. Maria A. Audero <br><br> **DECLARATION OF JOHN FATTAHI IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** <br><br> Date:   January 29, 2024 <br> Time:   1:30 p.m. <br> Crtrm: 5D |

## DECLARATION OF JOHN FATTAHI

I, JOHN FATTAHI, declare as follows:

1.     I am an attorney duly licensed to practice law in the State of California and in the United States District Court for the Central District of California.  I make this Declaration in support of Plaintiff's Motion for Attorneys' Fees.  I have personal knowledge of the facts contained herein and could testify competently thereto if called.

2.     **Hours Reasonably Expended.**  I have reasonably expended 3.8 hours of billable time on this matter.  Below is a table of my contemporaneous line-item billing entries from December 6, 2023, through December 14, 2023:

| Date | Duration | Description |
|------|----------|-------------|
| 12/06/2023 | 1.3 | Confer with R Masongsong re post-trial motion opposition, review meet and confer letter from defense counsel, review judgment, verdict form, jury instructions, composite video |
| 12/11/2023 | 1.7 | Review Defs.' motion for new trial or to alter/amend judgment; memo to file re same |
| 12/11/2023 | 0.3 | Confer with R Masongsong re fee motion, draft paragraph for fee motion regarding hourly rate |
| 12/12/2023 | 0.5 | Draft fee declaration, confer with C Sobel re proposed hourly rate and supporting declaration |
| **Total:** | **3.8** | |

3.     On December 6, 2023, I was contacted by Dale Galipo regarding my assistance with potential post-trial motions and appeals in this matter.  As I have in several other matters in which Mr. Galipo has obtained excellent trial results, I agreed to accept the representation on a contingent basis.  When I accepted the representation, I understood that it would preclude me from accepting other employment.  I was only able to accept the representation on a contingent basis because of the potential recovery of attorneys' fees and costs under 42 U.S.C. § 1988.  I contemporaneously tracked my time in tenth-of-an-hour increments, and exercised billing judgment by excluding time spent on unproductive or

administrative tasks.  All time was reasonably incurred and could have been billed to a private client.  I have already excluded at least 2 hours of time spent on this matter.  I expect to incur additional time in connection with drafting Plaintiff's opposition to Defendants' motion for new trial.

4. **Reasonable Hourly Rate.**  A reasonable year 2023 fee for my professional services in this case is $920 per billable hour.  As recently recognized by Judge Cormac J. Carney of this Court in *Valenzuela v. City of Anaheim*, No. 8:17-cv-00278-CJC (DFMx), a reasonable year 2022 fee for my professional services in civil rights litigation of similar complexity was $850 per billable hour. The *Valenzuela* fee order, Doc. No. 462, is attached hereto as **Exhibit 1**.

5. I have been practicing law since 2006, and have almost exclusively practiced federal civil rights litigation since 2008.  I graduated from UCLA School of Law in 2006, where I was Senior Editor of the UCLA Law Review and spent one semester as a judicial extern to Judge Stephen Reinhardt of the U.S. Court of Appeals for the Ninth Circuit.  After graduation, I took and passed the California Bar Exam, then served for one year as a law clerk to U.S. District Judge Virginia A. Phillips in the Central District of California, where I gained invaluable insight into federal litigation, including civil rights litigation.  From October 2007 until February 2009, I was employed as a partnership-track litigation associate by one of the most prestigious and selective law firms in the world, Quinn Emanuel Urquhart & Sullivan, LLP (formerly Quinn Emanuel Urquhart Oliver & Hedges, LLP) in Los Angeles, California.  While at Quinn Emanuel, I litigated and tried to a plaintiff's verdict a prisoner lawsuit as a member of the Central District of California's pro bono civil rights panel.  In February 2009, I joined the Law Offices of Dale K. Galipo, where I practiced plaintiff's civil rights litigation.  In July 2011, I opened a solo practice that exclusively handles civil rights litigation.  I have continued to work closely with Mr. Galipo on several matters on which we have achieved great

success.  Further, since fall 2022, I have taken on a new role as "of counsel" to Mr. Galipo's firm, which includes providing strategic direction, overseeing affirmative appeals, and training new associates.

6.     With regard to civil rights litigation in federal court, I have had primary responsibility for several civil rights appeals before the Ninth Circuit and U.S. Supreme Court, resulting in published decisions that have clearly established several constitutional principles.  At the district court level, I have had primary responsibility for countless pleadings and motions, percipient, Rule 30(b)(6), and expert depositions, motions for summary judgment, pretrial documents, and post-trial motions.  I have also tried more than ten federal civil rights jury trials, usually as second chair but occasionally as lead trial counsel, obtaining a favorable result approximately 80% of the time.  I have obtained excellent results for my clients, including but not limited to the following since 2015:

- 2023: Obtained complete reversal of summary judgment order based on qualified immunity before the Tenth Circuit in fatal police shooting case in Oklahoma. (*Ibarra v. Lee*, 10th Cir.)

- 2023: After overseeing legal strategy for course and scope and color of law, successfully defended against Ninth Circuit appeal and post-trial motions a $17 million jury verdict obtained by Mr. Galipo in fatal police shooting case by off-duty LAPD officer at a Costco in Riverside County. (*French v. City of Los Angeles*, C.D. Cal., 9th Cir.)

- 2023: Opposed certiorari before the U.S. Supreme Court, after obtaining complete affirmance before the Ninth Circuit of $13.2 million jury verdict obtained by Mr. Galipo in fatal police chokehold case, including a published opinion, 6 F.4th 1098 (9th Cir. 2021), which established the entitlement to "loss of life" damages in § 1983 death cases, and an unpublished

memorandum affirming the denial of post-trial motions including qualified immunity. (*Valenzuela v. City of Anaheim*, C.D. Cal., 9th Cir., U.S.)

- 2022: Succeeded in obtaining Ninth Circuit affirmance on alternate grounds, which nullified district court's finding that restraint-related death was not the result of excessive force, thus permitting state tort and civil rights claims to be revived and litigated in state court. (*A.B. (Birtcher) v. County of San Diego*, 9th Cir.)

- 2020: Successfully opposed petition for a writ of certiorari to the U.S. Supreme Court challenging Ninth Circuit's denial of qualified immunity in fatal police restraint case. (*Deasey v. Slater*, U.S.)

- 2020: Successfully defended $4.5 million jury verdict obtained by Mr. Galipo in fatal police shooting case against post-trial motions for new trial and judgment as a matter of law, resulting in favorable settlement prior to appeal. (*L.D. (Frias) v. City of Los Angeles*, C.D. Cal.)

- 2019: Successfully defended $15.5 million jury verdict obtained by Mr. Galipo in fatal police shooting case against post-trial motions for new trial, remittitur, and judgment as a matter of law, resulting in settlement exceeding value of judgment prior to appeal. (*Archibald (Pickett) v. County of San Bernardino*, C.D. Cal.)

- 2018: Obtained $2.5 million jury verdict in McKinleyville, California, successfully opposed multiple post-trial motions, and negotiated $3.45 million settlement plus substantial policy and training reforms, in a federal civil rights action arising from jail officials' indifference to a schizophrenic arrestee's methamphetamine overdose.  There was no offer of settlement prior to disposition of the post-trial motions.  Before trial, I successfully advocated for the first application of an objective standard to a denial of a pretrial detainee's medical care under the Fourteenth Amendment Due Process

Clause, which the district judge, on behalf of the Ninth Circuit, adopted shortly thereafter in a published opinion in *Gordon v. County of Orange* (*"Gordon I"*), 888 F.3d 1118 (9th Cir. 2018). (*Borges v. County of Humboldt*, N.D. Cal.)

- 2018: Obtained complete affirmance of both the verdict and attorney fee award before the Ninth Circuit, after obtaining a $1.05 million jury verdict for Fourteenth Amendment familial interference claims arising from the fatal police shooting of the plaintiffs' son. (*Woods v. Fagan*, C.D. Cal., 9th Cir.)

- 2017: Obtained $1.67 million settlement arising from the fatal police shooting of an unarmed homeless man. (*J.M. v. City of Santa Ana*, C.D. Cal.)

- 2016: Obtained $1.9 million settlement arising from the fatal police shooting of an unarmed man wanted for an armed robbery during a lengthy foot pursuit. (*N.W. v. City of Long Beach*, C.D. Cal.)

- 2016: Obtained $3.7 million settlement arising from the fatal police shooting of an unarmed man following a pursuit of a stolen vehicle. (*Hallstrom v. City of Santa Ana*, C.D. Cal.)

- 2016: Obtained complete affirmance of $7.9 million judgment on jury verdict obtained by Mr. Galipo in fatal police shooting case on appeal to the Ninth Circuit. (*Zerby v. City of Long Beach*, 9th Cir.)

- 2015: Obtained complete affirmance of $3.7 million judgment on jury verdict obtained by Mr. Galipo in fatal police beating case on appeal to the Ninth Circuit. (*P.C. v. City of Los Angeles*, 9th Cir.)

- 2015: Obtained complete affirmance of $6.6 million judgment on jury verdict obtained by Mr. Galipo in quadriplegic police shooting case in post-trial motions, on appeal, and in opposition to certiorari to the U.S. Supreme Court. (*Contreras v. City of Los Angeles*, C.D. Cal., 9th Cir., U.S.)

7.     I was selected to the Super Lawyers Rising Stars Southern California list each year between 2015 and 2019, reflecting my reputation among my peers. Each year, no more than 2.5 percent of the lawyers in the state are selected to receive this honor. I am also frequently asked to give presentations on civil rights litigation to law students, fellow attorneys, and judges, including at national conferences and symposia.

8.     In addition to my firm's own case load, I am frequently asked to associate with co-counsel on pending or anticipated federal civil rights matters. In particular, Mr. Galipo and other attorneys have sought my counsel and services to oppose post-trial motions and defend appeals in numerous cases such as this involving the largest civil rights verdicts. These high stakes opportunities typically present themselves on short notice, demand substantial attention precluding other opportunities, attract exceptionally zealous advocacy from adverse parties and powerful *amici curiae* interests, carry a high degree of risk, and come with no guarantee of any compensation. Substantial plaintiff's verdicts are not infrequently negated by a successful motion for judgment as a matter of law or new trial. Even if a plaintiff's verdict manages to survive post-trial motions, about half (48 percent) of verdicts of over $1 million in large counties were reversed or modified on appeal from 2001 to 2005, as opposed to 35 percent of those under $100,000. *See* U.S. Department of Justice Bureau of Justice Statistics, Special Report: Appeals from General Civil Trials in 46 Large Counties, 2001–2005, at 6, *available at* https://www.bjs.gov/content/pub/pdf/agctlc05.pdf (June 2006). I believe that the reversal rate for large civil rights verdicts is likely higher, particularly in light of the Supreme Court's recent "beyond debate" formulation of the "clearly established" prong of qualified immunity. Typically, as in this case, my only compensation is the potential statutory fee awarded for my work by the Court and paid if and when a defendant has exhausted all appellate options and the judgment is enforceable. My

representation of Plaintiff in this case involves significant risk and extremely high stakes.  Nearly all of the clients I have represented in civil rights litigation have been indigent, many have been minors, and all have been unable to afford my services on a paid basis and therefore I routinely accept representations on a contingency basis and advance litigation costs.  If statutory attorneys' fees in line with prevailing market rates for similarly complex work were not available in cases such as this, I would not be able to represent clients such as Plaintiff in pursuit of remedies for violations of fundamental constitutional rights.  Based on my experience and qualifications to practice federal civil rights litigation, my reputation, and the quality of my work product as demonstrated by the results obtained in this case and others, a reasonable 2023 rate for my professional services in this case is $920 per billable hour.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this was executed on December 14, 2023, at Torrance, California.

_/s/ John Fattahi_
John Fattahi

# EXHIBIT 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

FERMIN VINCENT VALENZUELA,

       Plaintiff,

    v.

CITY OF ANAHEIM, *et al.*,

       Defendants.

_____

VINCENT VALENZUELA and XIMENA VALENZUELA by and through their guardian PATRICIA GONZALEZ,

       Plaintiffs,

    v.

CITY OF ANAHEIM, *et al.*,

       Defendants.

Case No.: SACV 17-00278-CJC (DFMx), consolidated with
SACV 17-02094-CJC (DFMx)

**ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFFS' MOTION FOR ATTORNEY FEES [Dkt. 459]**

## I.  INTRODUCTION & BACKGROUND

On July 2, 2016, members of the Anaheim Police Department applied a neck restraint on Fermin Vincent Valenzuela Junior ("Mr. Valenzuela") called the "carotid hold."  Mr. Valenzuela died.  Plaintiffs Fermin Vincent Valenzuela Senior (Mr. Valenzuela's father), Vincent Valenzuela (Mr. Valenzuela's son), and Ximena Valenzuela (Mr. Valenzuela's daughter) brought this civil rights action against Defendants City of Anaheim (the "City"), Officers Daniel Wolfe, Officer Woojin Jun, and Sergeant Daniel Gonzalez.  In November 2019, they presented evidence to a jury supporting their claims for excessive force, deprivation of substantive due process, municipal liability (on both unlawful policy and failure to train theories), wrongful death (on both negligence and battery theories), and violation of the Bane Act, Cal. Civ. Code § 52.1(b).

After five days of trial, the jury returned a verdict in favor of Mr. Valenzuela's children, finding, among other things, that Officers Jun and Wolfe used excessive force when they attempted to use the carotid hold, that Sergeant Gonzalez was liable as the supervising officer, and that the City's policy permitting the carotid hold in nondeadly force situations was unlawful.  (Dkt. 358.)  The trial proceeded to a second phase on damages.  After two additional days of trial, the jury returned with a second verdict, awarding Mr. Valenzuela's children a total of $13.2 million in damages—$3.6 million in loss of life damages, $6 million in pre-death pain and suffering, and $1.8 million to each child for past and future loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, and guidance.  (Dkt. 372.)  The Court denied Defendants' motions for judgment as a matter of law and for new trial and granted in substantial part Plaintiffs' motion for attorney fees, awarding $1,082,930 in fees incurred through trial.  (Dkt. 435.)

Defendants appealed to the Ninth Circuit, arguing that (1) the officers were entitled to qualified immunity, (2) the City was entitled to judgment as a matter of law because the policy was not unconstitutional, (3) Defendants were entitled to judgment on the Bane Act claim because it was inconsistent with the jury's finding on the Fourteenth Amendment claim, and (4) loss of life damages are not recoverable under 42 U.S.C. Section 1983. *See Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1101 (9th Cir. 2021); (Mot. at 17–18). In a published opinion and an unpublished memorandum decision, both of which drew a dissent from Judge Kenneth K. Lee, the Ninth Circuit affirmed this Court's ruling that Section 1983 permitted recovery of loss of life damages and that California state law to the contrary was inconsistent with Section 1983's goals. *Valenzuela*, 6 F.4th 1098, at 1101–02; *Valenzuela v. City of Anaheim*, 2021 WL 3362847 (9th Cir. Aug. 3, 2021). The Ninth Circuit denied Defendants' petition for panel rehearing and rehearing en banc, but eleven judges dissented on the issue of availability of loss of life damages. *Valenzuela v. City of Anaheim*, 29 F.4th 1093, 1094 (9th Cir. 2022). Defendants appealed to the United States Supreme Court, and the Supreme Court denied certiorari. *City of Anaheim v. Valenzuela*, 143 S. Ct. 523 (2022) (mem.).

Now before the Court is Plaintiffs' motion for attorney fees for their work responding to Defendants' appeals to the Ninth Circuit and the Supreme Court. (Dkt. 459 [hereinafter "Mot."].) Plaintiffs request a lodestar amount of $696,025 in attorney fees. Dkt. 461 [Reply] at 18.) In opposition, Defendants argue that (1) all of Plaintiffs' attorneys' hourly rates are excessive, and (2) some of those attorneys' hours are excessive and duplicative. (Dkt. 460 [Opposition, hereinafter "Opp."].) For the following reasons, Plaintiffs' motion is **GRANTED IN SUBSTANTIAL PART**.[1] The Court awards Plaintiffs $659,125 in attorney fees.

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for March 6, 2023 at 1:30 p.m. is hereby vacated and off calendar.

## II.   ANALYSIS

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).  In an action brought pursuant to 42 U.S.C. § 1983, however, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  A party is considered the prevailing party if it succeeds on any significant issue in litigation that achieves some of the benefit sought in bringing the lawsuit.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Defendants do not dispute that Plaintiffs prevailed on their claim on appeal that the scope of recoverable survival damages in California for Section 1983 claims includes survival damages for the decedent's loss of life—a question that was previously unclear.  Rather, Defendants contend that the fees Plaintiffs seek are unreasonable.

In assessing the reasonableness of a fee award, a district court considers twelve factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."  *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

There is a strong presumption that the lodestar figure represents a reasonable fee.  *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996); *see also Harris v. Marhoerfer*, 24 F.3d 16, 18 (9th Cir. 1994) ("Only in rare instances should the lodestar

figure be adjusted on the basis of other considerations.").  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law.  *Morales*, 96 F.3d at 364 & n.9.

### A. Hourly Rates

The Court first determines Plaintiffs' counsel's reasonable hourly rates.  "The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel, and fee awards in similar cases."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 114 (9th Cir. 2008).  Courts also are guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996); *see also Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005).  Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

### 1. Dale Galipo

Dale Galipo, the lead trial lawyer who then reviewed and edited the appellate briefs and delivered oral argument before the Ninth Circuit panel, requests an hourly rate of $1,200.  (Mot. at 7.)  Mr. Galipo graduated from UCLA law school in 1984.  (Dkt. 459-2 [Declaration of Dale K. Galipo] ¶ 3.)  Since 1991, he has managed his own law firm, and he has specialized in civil rights cases over the last two decades.  (*See id.* ¶ 4.)  After trial in this case, the Court found that $1,000 was a reasonable hourly rate for Mr.

Galipo, citing its recent award in *Craig et.al. v. County of Orange et.al.*, Case No. SACV 17-00491-CJC (KESx), Dkt. 245.

Now, the Court has recently awarded fees for Mr. Galipo's appellate efforts in *Craig*. *See id.*, Dkt. 280 (hereinafter "*Craig* Order"). The Court found that a $1,200 hourly rate, although high, was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation within the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020. (*Id.* at 4–6.) The Court finds that $1,200 is a reasonable hourly rate for Mr. Galipo in this case as well.

### 2. Kelsi Brown Corkran

Kelsi Brown Corkran, who led Plaintiffs' team in preparing and finalizing the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $1,075—her billing rate when she left private practice in 2021. (Mot. at 9–11; Dkt. 459-3 [Declaration of Kelsi Brown Corkran, hereinafter "Corkran Decl."] ¶¶ 12, 15.) Ms. Corkran graduated from the University of Chicago with a law degree and a master's degree in public policy in 2005. (Corkran Decl. ¶ 2.) Since 2021, she has been the Supreme Court Director at the Institute for Constitutional Advocacy & Protection ("ICAP"). (*Id.* ¶ 9.) The Court recently awarded an hourly rate of $1,075 for Ms. Corkran's work in *Craig*, (*Craig* Order at 6–7), and finds that rate to be reasonable in this case as well.

//
//
//

### 3. John Fattahi

John Fattahi, who "had primary responsibility for formulating strategy for, and drafting, Plaintiffs' answering brief and subsequent response to Defendants' petition for rehearing en banc before the Ninth Circuit," requests an hourly rate of $850. (Mot. at 11–14; Dkt. 459-4 [Declaration of John Fattahi, hereinafter "Fattahi Decl."] ¶ 3.) Mr. Fattahi graduated from UCLA School of Law in 2006. (Fattahi Decl. ¶ 4.) He served for one year as a law clerk to then-Chief U.S. District Judge Virginia A. Phillips in the Central District of California, was a litigation associate for two years at Quinn Emanuel Urquhart & Sullivan, LLP, and then worked for about two and a half years in Mr. Galipo's office before opening his own solo practice in 2011. (*Id.* ¶ 6.)

After trial, the Court found that $500 was a reasonable hourly rate for Mr. Fattahi, concluding that it was consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation with similar experience, and reflected the lesser novelty and difficulty of the issues during the post-trial stage when Mr. Fattahi participated. (Order at 6.) The Court also considered a then-recent court award to Mr. Fattahi of a $550 hourly rate for second-chairing a police excessive force trial, and fee settlements resulting in $540 and $550 hourly rates. (*Id.*)

Since the Court's last fee award, Mr. Fattahi has gained substantial additional experience. He has successfully defended millions of dollars in judgments obtained by Mr. Galipo on post-trial motions and appeal, and courts have awarded Mr. Fattahi $725 and $775 hourly rates in excessive force cases. (Fattahi Decl. ¶¶ 4, 7.) In addition, whereas the Court's previous $500 rate for Mr. Fattahi was based in part on its determination that "[t]he more novel and difficult legal issues and the impressiveness of the results obtained by the Plaintiffs happened before and during trial, not after trial when

Mr. Fattahi participated," (Dkt. 435 at 38), this appeal involved multiple novel and difficult legal issues, justifying a higher hourly rate. *See Moreno*, 534 F.3d at 114.

The Court finds that $850 is a reasonable hourly rate for Mr. Fattahi's work on appeal. This rate reflects Mr. Fattahi's substantial and increased experience over the last few years, his continued strong reputation within the field, and the skill required to succeed on appeal and the novelty and difficulty of the issues presented on appeal. It is also consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation and who graduated law school seventeen years ago. *See Donastorg*, 2021 WL 6103545, at *8 (explaining that the 2020 Real Rate Report lists partners working in commercial litigation at large firms in Los Angeles as earning between $941 and $1,235, with the median rate for litigation partners in Los Angeles at $660 per hour); *cf. McKibben*, 2019 WL 1109683, at *14; (Dkt. 459-1 [Declaration of Carol Sobel, hereinafter "Sobel Decl."] ¶¶ 44–50 [collecting evidence that Mr. Fattahi's requested rate is consistent with the market rate]).

### 4. Joseph Mead

Joseph Mead, who helped research and draft the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $850. (Mot. at 14–15; Dkt. 459-5 [Declaration of Joseph Mead, hereinafter "Mead Decl."] ¶ 10.) Mr. Mead graduated from the University of Michigan Law School *magna cum laude* in 2007. (Mead Decl. ¶ 2.) In 2021, he joined ICAP as Senior Counsel. (*Id.* ¶ 8.) The Court awarded an hourly rate of $850 for Mr. Mead's work in *Craig*, (*Craig* Order at 9–10), and finds that that rate is reasonable in this case as well.

//

//

### 5. Shelby Calambokidis

Shelby Calambokidis, who helped draft the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $650. (Mot. at 16–17; Dkt. 459-6 [Declaration of Shelby Calambokidis, hereinafter "Calambokidis Decl." ¶ 5.) After graduating *summa cum laude* from The University of Alabama School of Law in 2017, Ms. Calambokidis clerked for judges on the United States District Court for the District of Columbia and the Fourth Circuit and served as a law fellow at the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO). (Calambokidis Decl. ¶¶ 2–3.) In 2021, she joined ICAP as Counsel, where she has worked on multiple civil rights cases in federal district and appellate courts. (*Id.* ¶ 4.)

The Court finds that $650 is a reasonable hourly rate for Ms. Calambokidis. This rate reflects her experience in appellate law, the novelty and difficulty of the issues on appeal, and the skill required to litigate the appeal, and is also consistent with the prevailing rate of other attorneys who graduated law school six years ago. *See Donastorg*, 2021 WL 6103545, at *9 ("The 2020 Real Rate Report provides that the median rate for litigation associates in Los Angeles is $535, with rates of $740 in the upper quartile."); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶¶ 58–61 [collecting evidence that Ms. Calambokidis's requested rate is consistent with the market rate]).

### B. Billed Hours

The Court now determines whether the billed hours are reasonable. A court may award attorney fees only for the number of hours it concludes were reasonably expended on the litigation. *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary."). "[T]he fee

applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of th[e] hours worked." *Gates*, 987 F.2d at 1397–98.

In support of Plaintiffs' motion for fees, each attorney has submitted time records detailing the work they performed on the case. Mr. Galipo and Mr. Fattahi were primarily responsible for tasks related to the Ninth Circuit appeal and billed 391.8 hours to those tasks. Ms. Corkran, Mr. Mead, and Ms. Calambokidis were primarily responsible for tasks related to the Supreme Court petition and billed 281.3 hours to those tasks. The Court has carefully reviewed these five attorneys' billing records and finds that the billed hours are reasonable.

Defendants argue that no work performed by the ICAP attorneys—Ms. Corkran, Mr. Mead, and Ms. Calambokidis—should be compensated because "[i]t was not necessary to bring on three more lawyers to oppose the petition" for certiorari as Plaintiffs already had enough lawyers. (Opp. at 13.) The Court is unpersuaded. Supreme Court litigation is specialized and complex, and it was not unreasonable for Plaintiffs to bring on a team of specialists to handle the petition. This is especially so given that eleven Ninth Circuit judges dissented from the denial of rehearing en banc on the loss of life damages issue, and that the Supreme Court had previously granted review of the primary question presented by Defendants' petition, but ultimately dismissed it as improvidently granted due to a jurisdictional defect. (*See* Corkran Decl. ¶ 14 [citing *Jefferson v. City of Tarrant*, 522 U.S. 75 (1997)].)

Defendants also argue that some of the ICAP attorneys' time duplicates work performed at the Ninth Circuit level or was excessive. (Opp. at 13–14.) They submit annotations on Ms. Corkran's, Mr. Mead's, and Ms. Calambokidis's time records to this effect. (Dkt. 460-1.) However, the Court has reviewed these attorneys' time records and

finds the billed hours reasonable under the circumstances of this case.  This was an extremely complex appeal presenting numerous issues, some of which had never been decided before.  Thorough research was required both before the Ninth Circuit and the Supreme Court.  *See Moreno*, 534 F.3d at 1112 ("When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time.").  It was not unreasonable to spend substantial time researching, drafting, and revising the several briefs involved, or to have multiple people involved in that process.  *Cf. id.* ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

The Court will make one deduction to the fees Plaintiffs request, however.  Plaintiffs seek fees for work performed by Garo Mardirossian and Lawrence Marks.  (*See* Mot. at 22 [Lodestar Calculation Table].)  However, a review of both attorneys' billing records reveals that nearly all of Mr. Mardirossian's 19.2 hours billed and Mr. Marks' 44.4 hours billed was for "receipt and review" of the various documents on appeal.  (*See* Dkt. 459-7, Ex. 1; Dkt. 459-8, Ex. 1.)  Neither Plaintiffs' brief nor Mr. Mardirossian or Mr. Marks' declarations explains why their receipt and review of these documents was necessary or even helpful to Plaintiffs' success on appeal.  Accordingly, the Court will not award fees for their work.

Finally, Plaintiffs' counsel request compensation for their work related to their motion for attorneys' fees.  Time spent establishing an entitlement to fees under 42 U.S.C. § 1988 is compensable.  *See Clark v. City of L.A.*, 803 F.2d 987, 992 (9th Cir. 1986).  Plaintiffs' counsel included time spent preparing the motion in their original time

records.  In preparing the reply, Mr. Fattahi billed an additional 27.9 hours.  (*See* Dkt. 461-1 [Supplemental Declaration of John Fattahi].)  The Court will include this additional billed time in its lodestar calculation.

### C. Lodestar Calculation

Based on the above analysis, the lodestar amounts for Plaintiffs' counsel are as follows:

| Attorney | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Dale Galipo | $1,200 | 99.7 | $119,640 |
| Kelsi Brown Corkran | $1,075 | 144 | $154,800 |
| John Fattahi | $850 | 320[2] | $272,000 |
| Joseph Mead | $850 | 97.2 | $86,620 |
| Shelby Calambokidis | $650 | 40.1 | $26,065 |
| **Total** | | | **$659,125** |

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees is **GRANTED IN SUBSTANTIAL PART**.  Based on the Court's lodestar calculation, Plaintiffs are awarded $659,125 in attorneys' fees.

DATED:      February 23, 2023

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

**CC: FISCAL**

---

[2]  This number is calculated based on 193.1 (total billed hours) + 27.9 (hours spent preparing reply).