LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE JUAREZ ZELAYA, Individually and as Successor-in-Interest to Decedent JACOBO JUAREZ CEDILLO;<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; DUSTIN RICHMOND; JOSEPH HUNT,<br><br>Defendants. | Case No.: 2:20-cv-08382-ODW-MAA<br><br>*Assigned to:*<br>Hon. Otis D. Wright, II<br>Hon. Mag. Maria A. Audero<br><br>**DECLARATION OF CAROL A. SOBEL IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Date: January 29, 2024<br>Time: 1:30 p.m.<br>Crtrm: 5D |

DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1. I am an attorney admitted to practice before the Supreme Court of California and the United States District Court for the Central District of California, among other federal courts. I have personal knowledge of the facts herein and, if called to testify to those facts, could and would do so competently.

2. I graduated from law school and was admitted to practice in 1978. Following 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997. My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices. Exhibit 20 is my resumé.

3. I received many awards for my legal work over the years. In 2008, I was named a California Lawyer of the Year (CLAY) for civil rights by California Lawyer Magazine. That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation. In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California. In 2013 and again in 2014, I was named one of the top 50 women lawyers in Los Angeles. I am named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for more than a decade. Additional recognition of my legal work is set out in my attached resumé.

4. For the six years prior to 1997, I was a Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California. During that time period, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party. Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish

1

reasonable market rates for the ACLU lawyers. It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this on an annual basis, contacting partners familiar with the ACLU lawyers in question so that they could assess the comparable skill levels of attorneys at their firms to establish ACLU billing rates. At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

5. As a sole practitioner, I assess a reasonable market rate by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as when I was employed by the ACLU. Since entering private practice, I continue to survey firms each year to obtain relevant comparisons for billing rates. I generally begin this process the first time in each year I prepare a fee motion or enter into settlement discussions regarding fees. As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

6. I also review attorney fee applications and awards in other cases than my own. Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles. I do this to determine what is being sought and approved as market rates for lawyers from these firms. Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well.

7. When I become aware of a case where statutory fees are sought, I

1  obtain fee applications and any resulting awards from on-line public records for the
2  courts, as well as from legal research databases such as LEXIS and Westlaw.
3  Included in my review of fee applications and awards are those by, and awards to,
4  large firms engaged in complex litigation to assess customary billing rates for these
5  firms.  Many of these commercial firms also serve as pro bono counsel on occasion.
6  I estimate that I review around 100 or more fee motions, supporting declarations
7  and fee awards annually and have done so for more than 30 years.

8.  My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates. In September 2023, my declaration was repeatedly cited with approval for both rates and methodology in an order awarding attorney fee in *Mickail Myles v. County of San Diego*, Case No. 3:15-cv-01985-JAH-BLM (S.D. CA 2023). {Doc. 484, p.7]. The motion in *Myles* was filed in late 2022 in the San Diego legal market.   Earlier in 2023, my declaration was cited with approval in *Valenzuela v. City of Anaheim*, Case No.: SACV 17-00278-CJC (DFMx) (C.D. CA. 2023) [Dkt. 462], and the companion case of *Craig v. City of Anaheim,* SACV 17-02094-CJC (DFMx) (C.D. CA 2023) [Dkt. 280], on behalf of the Galipo law firm. My declaration on rates was also cited with approval in and *D. R., a minor v. Redondo Beach Unified School District*, Case No. 21-56033 (9th Cir. Aug. 2023). In *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of attorney's fees for the ACLU under the Equal Access to Justice Act ("EAJA").  In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting IDEA fee, , 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates.  In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), Judge Pregerson awarded fees to a 1975 graduate at $675 an hour, specifically citing to my declaration and that of Barry Litt to support the requested rates.  *Id.* at

3

1  pp. 8-9 and n.4. Additional cases in which my declarations have been cited
2  favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-
3  0853 DOC (May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29, 963-
4  964(C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal.
5  Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v.
6  Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of
7  Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v.
8  County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles,* cv-11-08145
9  CAS (C.D. Cal. March 3, 2014); *Flores v. City of Westminster*, SA-CV-11-
10 0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist.
11 LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-
12 RAJ [Doc. 223] (W.D. WA 02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-
13 01992 PLA (C.D. Cal. January 4, 2018) [Doc. 180, p.5]; and *Carrillo v.
14 Schneider Logistics,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr.
15 2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx.
16 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012). The Ninth Circuit
17 cited to my declaration in approving enhanced EAJA rates for the ACLU and other
18 immigration attorneys in *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v.
19 Sessions,* 892 F.3d 985 (9th Cir. 2018). In *Jochimsen*, a unanimous court held I
20 was qualified as an expert on market rates.
21      9.      I litigated statutory fee issues at the appellate level in several cases,
22 including *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004),
23 the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004),
24 affirming continued vitality of the "catalyst" fee doctrine in California and
25 upholding almost $2 million in fees in a multi-plaintiff sexual
26 discrimination/harassment lawsuit on behalf of female employees of the Los
27 Angeles Police Department. I was also counsel in *Jones v. City of Los Angeles*,
28

4

555 Fed. Appx. 659 (2014), establishing entitlement to fees as a "prevailing party" based on the Circuit's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

10. I provide training on attorney fees best practices for civil rights and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU. I also have done CLEs on attorney fees for the National Lawyers Guild and the National Police Accountability Project.

11. In addition, I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours. Many of these cases involve multiple attorneys and law offices. In those instances, I am usually the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any impermissible hours. This includes, among other issues, eliminating clerical tasks, unnecessarily duplicative items, improperly billed items and vague items. For example, in the *Tipton-Whittingham* case cited above, it was my responsibility to review the fee records covering six years of hours for attorneys from three firms: the ACLU, the Western Regional Office of the NAACP Legal Defense Fund, and Litt & Associates. The unadorned lodestar in *Tipton* was approximately $1,900,000.

12. In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, involving a police assault on a lawful demonstration in MacArthur Park on May Day, 2007, I performed a billing judgment on the fee records for all attorneys and support staff in the case. Because the case was a hybrid class action, with both 300 individual plaintiffs and a residual class of several thousand persons, the legal team was sizable. The fee approved in the case was $3,713,000.

13. In all the fee declarations that I prepare, I apply my understanding of the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that

5

"rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11. I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful. *See, Nadarajah v Holder,* 569 F3d at 910.

14. I apply several additional principles to assess market rates. First, when available, I look at rates awarded to the attorneys in previous cases because I understand such awards are viewed as strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008). Past decisions where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dept.*, 470 F. 3d 889, 892 (9th Cir. 2008).

15. Next, I look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys who do not bill on an hourly basis. *See Blum*, 465 U.S. at 895. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (approving use of declarations of other attorneys regarding prevailing rates in the relevant market and rates in other cases). I understand the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotation omitted).

16. When the specific rate evidence identified in the preceding paragraph

is available, I usually do not rely on surveys because, in my opinion, they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the individual attorneys included in the survey and often no indication of the relevant legal market. *See e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where the lower court relied on a national survey rather than local rates).

17. I do not apply rates billed by and paid to opposing counsel who are usually salaried, contract government attorneys, or retained insurance defense lawyers as they generally charge rates well below market and are paid win or lose, so they do not share the risk of fee-shifting statutes and other contingent fees. *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (government lawyers and retained defense attorneys generally bill at lower rates, so they do not reflect the same legal market).

18. Finally, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the hours, not the lodestar rate. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

19. The most important factors in determining reasonable market rates are skill and experience. The size of the firm is not a determinative factor. In *Davis v. City & County of San Francisco*, 976 F.2d 1536, modified on other grounds, 984 F.2d 345 (9th Cir. 1993), the Court upheld rates for sole practitioners and non-profit law firm staff at those charged by "corporate attorneys of equal caliber." *Id.* at 1545. *See also Auer v. Robbins*, 519 U.S. 452 (1997) (market rates for comparably skilled attorneys not reduced based on firm size).

20. I estimate that I review nearly 100 fee motions, fee awards, and supporting declarations in a year. I subscribe to several websites that report legal news. When I learn of a case where fees were awarded, I obtain copies of the

7

relevant documents from public sources, including Court websites and PACER. If I am preparing a supporting declaration for a specific jurisdiction, I search for recent fee awards in that specific legal market.

21. To support my opinion on the reasonableness of the fees sought by this motion, I attach fee awards and declarations in cases in the Los Angeles legal market. Each is a true and correct copy of the document available in the Court's files. Some are now several years old, so they do not reflect current rates. In *Hiken v. DOD*, the court noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original). To adjust for rates more than two years old, I apply a minimum of a 3.1 percent increase, which was the average legal services component increase in the Consumer Price Index for Los Angeles before the pandemic. *See* http://www.bis.gov/news.release/cpi.102.htm (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average by detailed expenditure category). For the last two years, I use a slightly higher increase of five percent to reflect higher inflation. Even that increase is below what I observed for increases in the Los Angeles legal market at firms doing complex litigation.

22. In my experience, billing rates in Los Angeles at large commercial firms increase annually at more than the cost-of-living rate and to reflect both increased experience and rises in base rates. For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30, 2012), the Court rejected the defense's argument that the rate then sought by attorney V. James DeSimone should be limited to what was approved in prior years. "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors." 2012 U.S. Dist. LEXIS 91069, *24. In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), the Court approved an increase of 10 percent in one year.

"It is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice."

23.     My rate for 2023 is $1,250 an hour. I have not filed a contested fee motion in several years other than to seek Court approval of the fees in class-action settlements, or to settle non-class cases. The last such application I filed applied a 2022 rate of $1,150 an hour in *Shawn Carroll, et al. v. County of Orange, et al.*, Case No. 8:19-cv-00614 DOC-DFM, a class-action challenging Orange County's regulations for determining eligibility to qualify for General Relief.

24.     In May 2019, I used the rate of $1050 an hour for the fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.) and for a lodestar cross-check in a class action, *Chua v. City of Los Angeles*, Case 2:16-cv-00237-JAK-GJS. Prior to 2019, I resolved attorney fees in several cases at rates of $900 and $975 an hour. My last court-awarded fee in a contested motion was $875 in 2014 in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

25.     I understand fees are sought at the following 2023 rates in this action.

| Personnel | Role | Graduation | Experience | Rate |
|---|---|---|---|---|
| Dale Galipo | Attorney | 1984 | 34 | $1,300.00 |
| John Fattahi | Attorney | 2006 | 17 | $ 920.00 |
| Renee V. Masongsong | Attorney | 2011 | 12 | $ 700.00 |
| Benjamin Levine | Attorney | 2021 | 2 | $ 400.00 |
| Santiago Laurel | Paralegal | n/a | | $ 220.00 |

**DALE GALIPO**

26.     Mr. Galipo seeks a rate of $1300 an hour for 2023. I know Mr. Galipo personally and am familiar with his skill, experience and reputation. Based on my

9

discussions with other civil rights attorneys in California, I am of the belief that many highly skilled civil rights lawyers share my view that Mr. Galipo is exceptionally experienced and skilled and one of the premier trial attorneys in the nation. I am aware that he was recently awarded $1,200 an hour in two cases earlier this year by Judge Carney. I provided a supporting fee declaration in these cases and am aware that the fees were based on 2022 rates, which had been provided to opposing counsel in earlier attempts to resolve the fees without a motion. I attach several recent decisions awarding attorney fees in the Los Angeles legal market to support the reasonableness of this rate.

27.   As an initial framework, attached at Exhibit 21 is the Wolters Kluwer 2023 Real Rate Report ("Real Rate Report") information for the Los Angeles legal market. The 2023 Report is the most recent version available on the Wolters Kluwer website. The 2023 Real Rate Report is based on data collected in 2022 through early 2023. *Id.* For partners in Los Angeles practicing in several areas of complex litigation, the third-quartile rates for 2023 were approximately $1,100 an hour. This is true even where the Real Rate Report broke down rates into partners with more than 21 years of experience and those with less than 21 years. See Ex. 21. For a partner with less than 21 years experience, the third quartile rate was $1,102 an hour. *Id*.

28.   Attached at Exhibit 33 is an excerpt from the 2022 Real Rate Report. Comparing the 2022 and 2023 Report, Exhibit 21 shows some significant jumps, including a 15.86% increase in the median rate from the 2022 Real Rate Report for Los Angeles litigation partners generally; an 8.51% increase for the mean rate, and a 10.91% increase in the third-quartile rate for the same group. Compare 2023 Real Rate Report at 16, with 2022 Real Rate Report at 16 (2022 median of $725 to 2023 median of $840; 2022 mean of $799 to 2023 mean of $867; 2022 third-quartile of $1,045 to 2023 third-quartile of $1,159). These rates are consistent with the

10

1  approved rates set forth below for specific attorneys in the Los Angeles legal
2  market.

3      29.    In these same areas of complex litigation, the Real Rate Report
4  documents an increase in rates from 2020 to 2022 of approximately 30 percent.
5  For example, in the area of "Corporate Other," the rate for the third quartile for
6  partners increased from $1,051 to $1,370 an hour.  In the area of Corporate
7  Regulatory and Compliance, the rate for the third quartile for partners increased
8  from $1,003 to $1,224 an hour.  For the Finance and Securities sector, the rate
9  increased slightly less from $1,236 to $1,434 an hour.  For Intellectual Property,
10 the rate increased from $1,025 to $1,209 an hour. Exhibit 33.

11     30.    Attached at Exhibit 22 is the Declaration of Michael Strub filed in
12 2023 in support of a motion for attorney fees in *Nelson v. Phoebe Bridgers*, LASC
13 Case No. 21STCV35635, an anti-SLAPP case.  Mr. Strub averred that he is a
14 partner at Greenberg & Gross, a 1990 law graduate, and has a 2022 billing rate of
15 $1,095 an hour.  Ex. 22, ¶¶1, 23.  His declaration also provides the rates for Mssrs.
16 Greenberg and Gross, both listed as 1988 law graduates, at $1,400 an hour. *Id.* ¶23.

17     31.    Attached at Exhibit 23 is the Declaration of Luke Brooks filed in
18 support of a motion for fees on a lodestar cross-check in a class-action lawsuit,
19 *Fleming v. Impax Laboratories, Inc.*, Case No. 4:16-cv-06557 HSG (C.D. CA
20 2022).  Mr. Brooks is an attorney with Robbins, Geller, Rudman & Dowd, LLP.
21 Exhibit A to Mr. Brooks' declaration sets out rates for the firm's attorneys,
22 including Darren Robbins at the 2022 rate of $1,325 an hour.  I reviewed Mr.
23 Robbins' listing on the firm's website and, on that basis, conclude that he is a 1993
24 law graduate.  Mr. Robbins' 2022 rate is slightly higher than the 2023 rate requested
25 for Mr. Galipo, who has significantly more experience.

26     32.    Attached at Exhibit 24 is the order awarding fees in *Garcia v. Seltzer-*
27 *Dorene Management Co., Inc.*, LASC Case BC 699421 (2021), at 2021 rates for

28

11

attorneys at Shegerian & Associates, an employment law firm. Because the Court's Order does not set out the specific rates approved, I provide the Court's tentative order at Exhibit 25. The approved rates for all counsel are contained in Table C. Ex.6, p.13. The Court in *Garcia* approved the 2021 rate of $1300 an hour for Carney Shegerian, Based on my review of the firm's website, I believe Mr. Shegerian was admitted in 1990. In 2021, he had 31 years of experience.

33. Attached at Exhibit 26 is the Declaration of Eric Rowen of Greenberg Traurig in support of a motion for fees in *Simons v. Superior Court ("Simons I")*, LASC Case No. 19STCP01994. The motion sought fees at historical rates for 2018 and 2019 in a complex business matter. The lower Court's award was upheld on appeal in an unpublished decision available at 2022 Cal. App. Unpub. LEXIS 1854, affirming the requested 2019 rate of $1,000 an hour for Eric Rowen. In his declaration, Mr. Rowen avers that he is a 1982 law graduate. Ex. 26, p. 7.

34. After the ruling by the appellate court, Greenberg Traurig filed a motion for additional attorney fees for the appeal ("*Simons II*"). Mr. Rowen filed a declaration in support of the motion, setting out the firm's rates for 2020 and 2021. A true and correct copy of the second Rowen declaration is submitted at Exhibit 27. Mr. Rowen averred that his 2021 rate was $1,380 an hour, $80 an hour above the 2023 rate requested for Mr. Galipo.

35. Attached at Exhibit 28 is the Order approving fees for attorneys at Gibson, Dunn & Crutcher in *Isaacs v. USC Keck School of Medicine*, Case NO. 2:19-CV-08000-DSF-RAO (C.D. CA. 2020), an anti-SLAPP case. The Court noted that Gibson Dunn's rates were on the "higher side" but, nonetheless, found them to be reasonable rates for the Los Angeles legal market. *Id.* at p. 3. Because the Court's order did not set out the specific rates approved, I attach at Exhibit 29 the Declaration of James Fogelman in support of the motion for fees.

36. In his declaration, Mr. Fogelman averred that he is a partner at Gibson

12

Dunn & Crutcher and a 1992 law graduate. The firm's time records are at Exhibit A to his declaration. Mr. Fogelman's hourly rate in 2020 was $1,265.00. Ex. 29, ¶ 2. In 2020, Mr. Fogelman had 28 years of experience.

37. In *Herring Networks v. Rachel Maddow*, Case No. 19-cv-1713 BAS-AHG (S.D. CA. 2020, Gibson Dunn submitted the declaration of Scott Edelman, listing the firm's customary billing rates in the Los Angeles legal market. A true and correct copy of the Edelman Declaration is attached at Exhibit 30. Mr. Edelman averred that the 2020 rate for Theodore Boutrous was $1,525 an hour and that his 2020 rate was $1,395 an hour. Ex. 30, ¶ 18. I reviewed the firm's website and believe Mr. Boutrous graduated in 1987 and Mr. Edelman in 1984.

38. The *Herring Networks* case was an anti-SLAPP lawsuit before the Southern District of California. The Court reduced the requested Los Angeles rates to reflect market rates in San Diego, approving a 2020 rate for Mr. Boutrous at $1,150 and $1,050 as the 2020 rate for Mr. Edelman. Applying a five percent inflation adjustment for 2021, 2022 and 2023, the equivalent rate for Mr. Edelman would now be $1,215 in the San Diego legal market and $1,615 in the Los Angeles legal market. The equivalent rates for Mr. Boutrous would be approximately $1,765 an hour in the Los Angeles legal market.

39. The attorney fee award to Gibson Dunn for 2022 rates also supports the reasonableness of the rate of $1300 an hour for Dale Galipo. In her declaration filed in support of the fee request, Anne Champion averred that her customary billing rate for 2020 was $1,295 and that it increased nearly 10 percent to $1,430 an hour for 2021. A true and correct copy of the Champion Declaration is attached at Exhibit 31, ¶ 6. Ms. Champion averred she is a 2005 law school graduate. *Id.*, ¶ 3. She has less than half the experience of Mr. Galipo and was approved at a 2021 rate 10 percent higher than the 2023 rate requested by Mr. Galipo.

40. Attached at Exhibit 32 is an excerpt from the fee application by

13

Munger, Tolles & Olson in the PGE Bankruptcy proceedings in the United States District Court for Northern California, *PG&E CORPORATION*, - and –PACIFIC GAS AND ELECTRIC, Bankruptcy Case No. 19-30088 (DM). Although MTO sought a blended rate of over $1,000 an hour for the most experienced attorneys on the case, the motion provided the individual customary rates for all billers at the firm in all cases, not just Bankruptcy. *Id.* p. 16. The 2020 rates included $1400 an hour for Donald Verilli, identified as a 1983 admittee; $1400 an hour for Henry Weissmann, listed as a 1987 admittee; $1,320 an hour for Michael Doyen, listed as a 1982 admittee; $1400 an hour Luis Li, listed as a 1991 admittee; and $1,220 an hour for attorney Judith Kitano at MTO, identified as a 1988 admittee. Ex. 32.

**JOHN FATTAHI**

41. I know Mr. Fattahi personally and am familiar with his skill, experience and reputation. I met Mr. Fattahi when he was preparing for his first appellate argument, shortly after completing his clerkship. Based on my discussions with other civil rights attorneys in California, I am of the belief that many highly skilled civil rights lawyers share my view.

42. The approved 2019 rates for the Greenberg Traurig firm in *Simons* of $890 an hour for Matthew Gershman, a 2007 law graduate, and $880 an hour for Karen Bohmboldt, a 2004 law graduate, are comparable to the rate requested for John Fattahi. Ex. 26, p.7. In 2019, Mr. Gershman had five years less experience than Mr. Fattahi has now and Karen Bohmboldt had two years less.

43. As previously noted, Greenberg Traurig filed a motion for additional attorney fees for the appeal. Mr. Rowen filed a declaration in support of the motion, setting out the firm's rates for 2020 and 2021. Exhibit 27. He averred that the 2021 rate for Mr. Gershman was $935 an hour, which is higher than Mr. Fattahi's

requested rate. Ex. 27, p. 9 ¶ 37. In 2021, Mr. Gershman had three years less experience than Mr. Fattahi has now.

44. In *Isaacs v. USC Keck School*, the approved rate for Shannon Mader at Gibson Dunn was $915 an hour. Exs. 28-29. Based on my review of the firm's website, Mr. Mader is a 2004 law graduate. In 2020, he had one year less experience than Mr. Fattahi has now.

45. Attached at Exhibit 32 is an excerpt from the application for attorney fees by Munger Tolles & Olson ("MTO") in the PGE Bankruptcy Court proceedings in the Northern District of California. MTO partner Bradley Schneider of the Los Angeles office filed the application and attested that the rates set forth in Exhibit "D" were the customary billing rates for all complex business litigation by the firm and those rates are used nationally. Ex. 32, p. 11, 13-23. Among the attorneys for whom fees were sought were Jeffrey Wu, identified as a 2007 admittee with a 2020 rate of $920 an hour; Kimberly Chi, identified as a 2006 admittee with a 2020 rate of $920 an hour; and Matthew MacDonald, identified as a 2008 admittee with a 2020 rate of $950 an hour. In 2020, Mr. Wu had 13 years of experience, Ms. Chi had 14 years of experience, and Mr. MacDonald had 12 years of experience. The MTO 2020 rates are greater than or equal to the rate sought for Mr. Fattahi by this motion, where he has several additional years of experience than each of the listed MTO attorneys.

**RENEE V. MASONGSONG**

46. The rate of $700 an hour for Renee V. Masongsong, a 2011 law graduate with 12 years of experience, is at the low end of the market rate for similarly experienced and skilled attorneys. To illustrate, Matthew Gershman, an attorney at Greenberg Traurig, was awarded consistently higher rates several years ago in *Simons I and II*. In *Simons I*, the court approved the 2019 rate of $890 an

15

1 | hour for Matthew Gershman, a 2007 law graduate then with 12 years of experience. Ex. 26, p.7.  His approved 2019 rate is nearly 30 percent above the rate now requested for Ms. Masongsong.

47. In *Simons I*, the court also approved the 2019 rates of $650 an hour for Christopher Ramos, then with five years of experience. *Id.*  Ex. 26, p. 7.  Ms. Masongsong has approximately seven years' more experience.

48. The Munger Tolles & Olsen 2020 rates also support Ms. Masongsong's requested 2023 rate of $700 an hour.  In the *PGE* bankruptcy case, the rate for Nicholas Fram and Zachary Briers, both listed as a 2012 admittee, then with eight years of experience, was $860 an hour, more than 20 percent above the rate now sought for Ms. Masongsong.  MTO also included the rate of $860 an hour for Jennifer C. Broder, listed as a 2011 admittee; and $895 an hour for Erin J. Cox, listed as a 2009 admittee; and $920 an hour for Jeremy Lawrence, identified as a 2010 law graduate then with 10 years of experience.   Ex. 32, p. 3 (Exhibit D). Even the 2020 rates of $780 an hour for Andre Brewster and $820 an hour for Graham Cole, both identified as fifth-year associates at MTO, were more than 10 percent higher than the rate now requested for Ms. Masongsong.  Ex. 32, p. 4.

49. Ms. Masongsong's requested 2023 rate of $700 an hour is also low when compared to the 2021 customary billing rates for Robbins, Geller, a relatively small firm based in San Diego and focusing on class-action litigation. In *Fleming*, the rate for Angel P. Lau was $760 an hour. Ex. 23, p. 8.  I located Mr. Lau on the California State Bar and determined that he now works for Governor Newsom's administration.  He is listed as a 2012 admittee, one year after Ms. Masongsong. In 2021, Angel Lau had nine years of experience, three years less than Ms. Masongsong has now.   Lau's 2021 rate is slightly less than nine percent higher than the rate now requested for Ms. Masongsong.

50. In *Isaacs*, Gibson Dunn was also awarded attorney fees for Katarzyna

16

1 Ryzewska. I reviewed Ms. Ryzewska's information on the firm's website and, on
2 that basis, believe that she is a 2013 law graduate with seven years' experience in
3 2020, the year of the *Isaacs* award. I calculated her billing rate by reviewing the
4 entries in Exhibit A to the Fogelman declaration. I concluded that her 2020 rate
5 was $815 an hour, $115 an hour above the 2023 rate sought for Ms. Masongsong,
6 who has five additional years of experience. *See* Ex. 29, p. 5.

7     51. The 2020 rate for Gibson Dunn associate Meredith Simons, identified
8 as a 2017 law graduate, was $740 an hour. Ex. 31, p. 17. Ms. Simons' 2021 rate,
9 when she was a fourth-year associate, was $845 and hour and her 2022 rate rose to
10 $960 an hour. Ex. 31, pp. 43, 48.

**BENJAMIN LEVINE**

12     52. Benjamin Levine is a 2021 graduate who seeks $400 an hour. In my
13 opinion, this rate is slightly below the mid-range for attorneys of comparable skill
14 and experience in the Central District. In *Simons II*, the rate approved for Layal
15 Bishara, listed as a second-year associate, was $515 an hour for 2020 and $585 an
16 hour for 2021. Ex. 27, p. 7 (¶ 32).

17     53. The 2020 rate for a second-year associate at MTO was $565 an hour.
18 Ex. 32, p. 6 ("Lloyd Marshall").

19     54. In *Fleming*, Michael Strub averred that the 2022 rate for Desiree M.
20 Murray, identified as a third-year associate, was $495.00 an hour. Ex. 22, p. 6.

21     55. The chart below sets out the rates referenced in my declaration.

| Ex. | Attorney | Graduation | Award | Experience | Rate |
|---|---|---|---|---|---|
| 22 | Michael Strub | 1990 | 2022 | 32 | $1,095.00 |
| 22 | Alan Greenberg | 1988 | 2022 | 34 | $1,400.00 |
| 22 | Wayne Gross | 1988 | 2022 | 34 | $1,400.00 |
| 23 | Darren Robbins | 1993 | 2021 | 29 | $1,325.00 |

17

| 23 | Angel P. Lau | 2012 | 2021 | 9 | $ 760.00 |
|---|---|---|---|---|---|
| 24 | Carney Shegerian | 1990 | 2021 | 31 | $1,300.00 |
| 26 | Eric Rowen | 1982 | 2019 | 37 | $1,000.00 |
| 26 | Matthew Gershman | 2007 | 2019 | 12 | $ 890.00 |
| 26 | Karen Bohmboldt | 2004 | 2019 | 15 | $ 880.00 |
| 26 | Christopher Ramos | 2014 | 2019 | 5 | $ 650.00 |
| 27 | Eric Rowen | 1982 | 2021 | 39 | $1,400.00 |
| 27 | Matthew Gershman | 2007 | 2021 | 14 | $ 935.00 |
| 27 | Layal Bishara | 2019 | 2020 | 1 | $ 515.00 |
| 27 | Layal Bishara | 2019 | 2021 | 2 | $ 585.00 |
| 29 | James Fogelman | 1992 | 2020 | 28 | $1,265.00 |
| 29 | Shannon Mader | 2004 | 2020 | 16 | $ 915.00 |
| 29 | Katarzyna Ryzewska | 2013 | 2020 | 7 | $ 815.00 |
| 30 | Theodore Boutrous | 1987 | 2020 | 33 | $1,525.00 |
| 30 | Scott Edelman | 1984 | 2020 | 36 | $1,395.00 |
| 31 | Anne Champion | 2005 | 2020 | 15 | $1,295.00 |
| 31 | Anne Champion | 2005 | 2021 | 17 | $1,430.00 |
| 31 | Meredith Simons | 2017 | 2020 | 3 | $ 740.00 |
| 31 | Meredith Simons | 2017 | 2021 | 4 | $ 845.00 |
| 31 | Meredith Simons | 2017 | 2022 | 5 | $ 960.00 |
| 32 | Donald Verilli | 1983 | 2020 | 37 | $1,400.00 |
| 32 | Michael Doyen | 1982 | 2020 | 38 | $1,320.00 |
| 32 | Henry Weissmann | 1987 | 2020 | 33 | $1,400.00 |
| 32 | Luis Li | 1991 | 2020 | 29 | $1,400.00 |
| 32 | Judith Kitano | 1988 | 2020 | 32 | $1,220.00 |

| 32 | Matthew MacDonald | 2008 | 2020 | 12 | $ 950.00 |
| 32 | Jeffrey Wu | 2007 | 2020 | 13 | $ 920.00 |
| 32 | Kimberly Chi | 2006 | 2020 | 14 | $ 920.00 |
| 32 | Zachary Briers | 2012 | 2020 | 8 | $ 860.00 |
| 32 | Jennifer Broder | 2011 | 2020 | 9 | $ 860.00 |
| 32 | Erin Cox | 2009 | 2020 | 11 | $ 895.00 |
| 32 | Nicholas Fram | 2012 | 2020 | 8 | $ 860.00 |

56. Plaintiff seeks compensation for a paralegal at $220 an hour. In my experience, the practice in the Los Angeles legal market is to bill for paralegals. In *Nelson*, the range for paralegals was $295-345 an hour. Ex. 22, ¶23. In *Fleming*, the 2021 rates for paralegals at Robbins Geller was $275 to $350 an hour. Ex. 23, p. 8 (Exhibit A). In *Herring*, Gibson Dunn was awarded fees in the Southern District of California at the reduced rate of $265-280 for paralegals. Ex. 30, p. 14. In *McKibben v. McMahon,* Case 5:14-cv-02171-JGB-SP (C.D. Cal. 02/28/19) Doc. 103, the Court awarded paralegal fees to the law firm of McLane, Bednarski and Litt at the 2018 rates of $175 to $335 an hours. *Id.* at *19-20.

57. Based on the foregoing, I believe the rates sought by this motion are reasonable for comparably skilled and experienced attorneys in Los Angeles.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of December 2023, at Los Angeles, California.

*Carol Sobel*

CAROL A. SOBEL