# EXHIBIT 25

# 12   TENTATIVE RULINGS           9:15 a.m., Tuesday, December 7, 2021

ALBERT GARCIA, STEPHANIE GARCIA v. SELTZER-DOREN MANAGEMENT COMPANY, INC. dba SIERRA MANAGEMENT, GRESHAM APARTMENTS INVESTORS, SELTZER-DOREN COMPANY & AFFLIATES, Case BC 699421.

### A. RULING ON PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES PLUS A MULTIPLIER:

### Attorneys' Fees Sought in Plaintiffs' Motion:

Prevailing plaintiffs by statute are authorized to seek an award for their attorneys' fees to the extent reasonably incurred to prosecute FEHA claims.

Plaintiffs in this fee motion seek attorneys' fees in the amount of $1,578,665 and ask the Court to exercise its discretion to increase that amount with a fee enhancement (a "multiplier") of 1.75, for a total attorneys' fees award of $2,762,663.75.

The court must review the attorneys' time records to prepare a lodestar analysis. The lodestar is calculated by a multiplying the number of hours for necessary legal services x a reasonable hourly rate for each timekeeper performing such tasks. Ketchum v. Moses (2001) 24 Cal. App.4th 1122, 1132 (attorneys' fees awarded after grant of a special motion to strike); Horsford v. Board of Trustees (2005) 132 Cal.App.4th 359, 394 (attorneys' fees awarded after a plaintiffs proved employment discrimination in a jury trial).

The Court in preparing a lodestar calculation has prepared the tabulations that are provided in the Appendix. Table A organizes plaintiffs' attorneys' time records to show by year the number of hours each timekeeper has charged to the litigation.

Table B reflects minor reductions in the hours reported for various timekeepers. Plaintiffs conceded a reduction in the hours reported by Messrs. Morrison and Ross, after receiving defendants' opposition to the fee motion. The Court also discovered and corrected an overcounting of 1.2 hours in Lim's time records. (Any undercounting of hours was not corrected.)

Table C contains any adjustments in the hours and billing rates for certain timekeepers by the Court in preparing its lodestar calculation.

1

**Plaintiffs Are Prevailing Parties Under the FEHA Attorneys' Fee Statute**

Plaintiffs prevailed at trial on claims alleging discrimination and retaliation under the Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq. Plaintiffs, therefore, are entitled to recover their reasonable attorneys' fees under Government Code section 12965(b), reading: "In civil actions brought under this section, the court, in its discretion, may award reasonable attorney's fees and costs...."

As stated in Horsford v. Board of Trustees 132 Cal. App. 4th supra at 394, an award of attorneys' fees "accomplishes the Legislature's expressly stated purpose of FEHA 'to provide effective remedies that will eliminate these discriminatory practices' [as identified in Gov. Code section 12920]. In order to be effective in accomplishing the legislative purpose of assuring the availability of counsel to bring meritorious actions under FEHA the goal of an award of attorney fees 'is to fix a fee at the fair market value for a particular action' [citing Ketchum v. Moses, supra, at 1132]."

Albert Garcia sued the two defendants for discrimination and retaliation based on medical condition (thyroid cancer) in violation of FEHA and for wrongful termination. The jury awarded Albert Garcia $2,352,924 in economic and non-economic damages, and further found, on clear and convincing evidence, that the defendants' conduct constituted "malice, oppression and/or fraud." In the phase 2 trial, the jury imposed $4 million in punitive damages in favor of Albert Garcia. (See, Exh. 11.)

Stephanie Garcia sued defendants for association discrimination and retaliation (based on Albert's medical condition) in violation of FEHA and for wrongful termination. (After her death Stephanie's estate was substituted in as a plaintiff.) The jury awarded the Stephanie Garcia Estate economic damages of $30,726, and further found, on clear and convincing evidence, that the defendants' conduct constituted "malice, oppression and/or fraud." In the phase 2 trial, they jury imposed punitive damages in the sum of $1,250,000 in favor of the Stephanie Garcia Estate. (Exh. 11.)

The Court, in October, denied defendants' motions for a new trial and for judgment notwithstanding the verdict.

**Trial Court Proceedings:**

The litigation spanned four years. Plaintiffs were represented by attorneys from two law firms: Ross & Morrison and Shegerian & Associates.

Plaintiffs retained the Ross & Morrison Law Firm in November 2017; that law firm filed separate complaints for Albert Garcia and Stephanie Garcia that were consolidated for discovery and trial.

Ross & Morrison negotiated the association of Shegerian & Associates as trial counsel in October 2018. The Shegerian Firm, however, billed limited hours to the case before this year. Carney Shegerian was plaintiffs' trial lawyer. Before 2021, he billed only 3.5 hours to the matter.

The matter was tried to a jury from July 6 to August 6, 2021 with the trial proceedings adjourned at various times to accommodate the availability of individual jurors. Mr. Shegerian was assisted during trial by Anthony Nguyen and Mark Lim.

The trial was transmitted over a video conferencing platform and was accessible to remote viewers. The proceedings available through the video facility could also be seen on a large monitor in the courtroom. Half of the jury elected to sit in the audience area of the courtroom to maintain social distancing from one another as recommended by the pandemic emergency orders. The video facility permitting the jurors seated in the audience area to better follow the trial testimony. Using the video facility counsel examining from behind the counsel table could be seen as well as the judge presiding from the bench. The video cameras did not show the witnesses testifying from the witness chair. The jury box was not visible, although the jurors spaced in the audience area could be seen. All persons in the courtroom were wearing masks over their mouth and nostrils. The video platform also allowed for remote examination of witnesses, should that be needed, and the monitor mounted on the wall was also used to project trial exhibits and excerpts played from video-graphed depositions.

The Court was surprised to see Mr. Morrison appear on the monitor before the voir dire panel was admitted into the courtroom on the first day of the trial. The Court told counsel he did not want attorneys to watch the trial remotely if they intended to seek to recover attorneys' fees for their time watching the trial. Mr. Shegerian assured the Court that attorneys who were not present the courtroom would not be seeking to charge for any time spent in watching the trial. However, the time records attached to this fee motion (Exhs. 1 and 2) show Morrison and Ross viewed large periods of the trial, and, while their time records state "no charge" for their trial-watching time, they seek to charge for hours spent in conferring with the trial team based on their watching of the trial proceedings over the teleconferencing facilty. The Court was unaware during the trial that Morrison and Ross were viewing the trial as neither turned on their cameras after the Court commented on the first day.

3

**Findings re Hours and Hourly Fee Rates for Shegerian & Associates:**

An attorney's billing rate sought in a fee motion must be shown to be necessary to a plaintiff's success; otherwise it is not under the statute "reasonably spent."[1]

Shegerian & Associates seek attorneys' fees for lawyers employed by that firm at the following hourly rates: Carney Shegerian--$1,300; Anthony Nguyen--$1,000; Jill McDonell--$1,000; Mark Lim--$700; Zackery Lynch--$375; and William Reed--$850. Time records are provided for all of those lawyers. Exhibits 3, 4, 5, 6, 7 and 8. Those lawyers, other than McDonell and Lynch, provide declarations in support of the fee request.

Little information is provided about the firm's practices in preparing time records. Mr. Nguyen made this brief statement (repeated in other declarations): "I am familiar with the proper procedure for calculating hourly bills. I understand which tasks are billable and which are not." Mr. Nguyen does not say whether the attorneys prepare the time records contemporaneously with the legal task that is reported; or whether the attorneys use actual time for their entries. The appellate decisions indicate that the trial court is to accept, unless suspicion is aroused, attorney time representations, and the Court will accept the number of hours claimed by Shegerian & Associates as substantially correct.

Having observed plaintiffs' trial team, Messrs. Shegerian, Nguyen and Lim, over the course of the trial, the Court formed a favorable opinion of their trial skills. Mr. Shegerian has previously tried cases in Department 15. He is a successful plaintiff's-side trial lawyer in employment cases. His trial skills are praised by other plaintiff's-side employment lawyers—in the declarations of Nicholas C. Rowley, Abash Homampour, Gary A. Dordick and Reza Mirroknian—in support of his requested $1,300 per hour rate. Mr. Rowley says: "As far as the Southern California legal community goes, Mr. Shegerian is among the best of the best. There is no employment lawyer in the country who has his success record or who tries as many cases." Rowley decl., para. 11. Mr. Dordick says: "I know Mr. Shegerian to be the preeminent employment lawyer in the country." Dordick decl., para 10. The Court will approve a billing rate for Mr Shegerian in this matter at $1,300 per hour.

The Court will approve a billing rate of $900 per hour for Mr. Nguyen, a 2008 law graduate. That hourly rate was approved for him by Judge Victor Chavez in 2020. Nuygen decl., para. 10. At the trial Nguyen examined two

---

[1] "'Reasonably spent' means that time spent 'in the form of inefficient or duplicative efforts is not subject to compensation. (Id at [Kitchum] 1132.'" Horsford v. Board of Trustees, 132 Cal.App.4th supra at 394.

4

witnesses and gave the rebuttal closing in the phase 2 trial. His ability during the trial to marshal the witness and documentary evidence assisted the lead examining attorney. Mr. Shegerian testified to his value to the trial team.

The billing rates charged by the attorneys practicing at Shegerian & Associates are recommended by the four declarants in a non-specific manner. Mr. Dordick says: "I also understand that Mr. Nguyen, Ms. McDonell (sic), Mr. Lim, Mr. Ross, Mr. Morrison, and Mr. Lynch, are requesting hourly rates of $1,000, $1,000, $850, $700, $975, $975, and $375, respectively. Based on my knowledge of their experience and abilities, I believe their requested rates to be within the range of comparable market rates charged by attorneys in Los Angeles." Dordick decl, para. 10. These comments are echoed in the Rowley, Homampour and Mirroknian declarations. These declarants, however, do not display any familiarity with the facts of this case nor of the actual contributions made in this case by each of the referenced attorneys. They further do not define in any way what is meant by their term "within the range of comparable market rates." The declarations provide little support for the requested lodestar rates. The Court assumes, however, because the declarants do not say otherwise, that these plaintiff's-side employment trial lawyers are proposing market rates for lawyers representing plaintiffs in contingent fee cases. As the appellate decisions state, an appropriate multiplier for a contingent fee case may be embodied in the hourly rate approved in a lodestar analysis rather than added after the lodestar calculation is made. Ketchum v. Moses, 24 Cal. App.4th supra at 1133; Horsford v. Board of Trustees, 132 Cal.App.4th supra at 394.

The Court will approve a $650 hourly rate for Mr. Lim, a 2016 law graduate. That rate for Mr. Lim was previously approved by Judge Victor Chavez. Lim examined two witnesses at trial and otherwise maintained contact with the potential witnesses during the trial.

The remaining three attorneys providing legal services for the Shegerian Law Firm with their billing rates are Jill McConell ($1,000 per hour), William Reed ($850), and Zachery Lynch ($375). McConell, a 1992 law graduate, contributed 9.9 hours, all on September 27, 2021, in preparing oppositions to defendants' motions for new trial and JNOV. (Exh. 7.) She is a specialist in preparing appellate and motion briefs. Shegerian decl., para. 24. Plaintiffs' briefs filed in opposition to defendants' post-trial motions were well researched and written. The Court will approve a lodestar $900 hourly rate for McConell.

William Reed provided legal services in attending with Mr. Morrison a mediation on July 22, 2019. His legal services were not otherwise used in the litigation. (His charge of 0.3 hours on 10/19/21 to review the Orrick declaration appears to be billed in error—there is no Orrick declaration). The Court believes that a $450 hourly rate is appropriate for Mr. Reed's contribution to the case. In

the mediation (which was unsuccessful) Mr. Morrison was the lead attorney; his firm was then managing the Garcia litigation. Whatever knowledge Reed gained about the case was not material as Reed provided no further legal services for the in the Garcia case.

The Court will approve an hourly rate for Mr. Lynch in the amount requested ($375). Lynch billed time to the case in the months April through September 2021; his time entries (in Exh. 6) indicate that he assisted the trial team in making contacts with the trial witnesses.

### Findings re Hours and Hourly Fee Rates of Ross & Morrison:

Andrew J. Morrison and Gary B. Ross filed declarations to support their fee request, testifying that Exhibits 1 and 2 to be "a true and correct copy of my time records detailing the time and hours I spent on this case." The declarations, however, provide no information concerning their time keeping practices such as whether each attorney recorded time entries concurrently as the legal services are provided. The time records show Ross and Morrison communicated with each other constantly about the litigation, even about routine matters. For instance, Morrison's entry for July 9, 2018 states: "review and analysis of defendants' responses to Form Interrogatories; conclude not to make a motion to compel"; while Ross' entry for the same date states "receipt, review and preliminary analysis of defendants' responses to plaintiff's first set of Form Interrogatories; strategy and analysis re: whether the bring a discovery motion (motion to compel further responses)."

Defendants' opposition complains that the Ross & Morrison time entries show extensive duplication, saying that "100 out of the total 350 entries (160 hours out of total 380 hours billed) by Mr. Ross are described as tasks performed by Mr. Morrison." Opp. 7: 11 and 22-23. Conferencing is appropriate, and often beneficial, when several attorneys are working as a team, but the extent of the conferencing in this case between Morrison and Ross when both are experienced employment lawyers and are claiming $975 per hour billing rates is a concern.

In October 2018 Ross & Morrison entered negotiations to associate a different law firm, Shegerian & Associates, to represent the plaintiffs at trial. Morrison's October 12 time entry reads: "telephone call from Gary Ross ... (he's on his way to meet client with Carney Shegerian)," while Ross' time entry three days later reads: "10/12-10/15 extensive communications with client, ADM and co-counsel re: retention of co-counsel for trial...." Ross & Morrison formally associated Shegerian & Associates as co-counsel on November 13, 2018. It is not a criticism that Ross & Morrison selected the Shegerian firm to be trial counsel but that circumstance should be considered in determining a lodestar calculation of the Ross & Morrison legal fees. In the legal market,

premium legal rates are accorded to lawyers who undertake to prove the case to a jury, while lesser rates are accorded to attorneys who provide legal services up to the trial.

### A. Reduction in Hours Claimed by Ross & Morrison:

Plaintiffs in their reply concede that 15.15 hours of Morrison's time was for clerical functions and should not have been included in the lodestar calculation. Plaintiffs likewise concede that 4.9 hours of Ross' time should not have been billed. The time adjustments for specific dates are shown in the Nguyen declaration filed on November 24. (These adjustments are also reflected in Table B.) These minor reductions do not address all of defendants' duplicate-billing concerns, but the Court, on the evidence it has, concludes not to make further reductions in the hours claimed for duplicate billing.

The Court will, however, deduct the Ross & Morrison hours for the time that they billed during the trial period, that is between July 5 through August 6, 2021. In this period Morrison and Ross provided to the Shegerian trial team their observations based on their remote viewing of the trial. For instance, Mr. Morrison in his time entry for July 13 (Exh. 1) states:

> "Review and analysis of text from Gary Ross including discussion re potential issues due to juror attrition; email responding to same (1.25); review and analysis of brief re grossing up damages and mitigation (.08); attend trial via Court Connect – attorneys only (1.09); strategy and legal analysis re: CACI issue; read CACIs; read court of appeals ruling; draft email; shorten email; send email (1.58); extensive strategy and legal analysis re: principal/agent issues (1.08)"

The Shegerian team consisted of three experienced and prepared trial attorneys. Plaintiffs' fee motion, in the declarations, have not provided any evidence that the contributions from Messrs. Morrison and Ross based on their remote observation of the trial provided material benefit to the trial team. The Court need not make a finding that the observations of Morrison and Ross rendered during the trial had no value; they were simply duplicative of the legal services rendered by the trial team and, thus, were not reasonably necessary. The Court finds that the time was beyond what was required given the competence of the trial team.

The time, moreover, is based on counsel's remote viewing of the trial proceedings. The Court stated expressly on the trial's first day that it would not approve legal fees based on counsel's remote viewing of the trial proceedings. Plaintiffs did not at any time request any exception from that ruling.

The hours that are deducted from Mr. Morrison's time entries in July and August are 16.58; and from Mr. Ross' time entries 36.00 hours.

### B. Reduction in Billing Rates Claimed by Ross & Morrison:

The hourly rates claimed by Ross & Morrison ($975 per hour for each partner) are not shown to be market rates for the legal services they provided. Plaintiffs provide no evidence that other courts have approved their legal fees in any lodestar calculation. Mr. Ross identifies two employment cases in which he was the prevailing attorney (see, Ross decl. referencing Dudley v. Sycamore Hathaway, BC 500071 and Beck v. Sybase, Inc., BC 1738551), but he noticeably does not state when those victories were achieved nor what lodestar legal fee he received from the trial judges.

The Court of Appeals criticized the performance of Ross & Morrison in this action, and that fact bears upon a lodestar calculation of their reasonable legal fee. Ross & Morrison, as plaintiffs' counsel, submitted an opposition to a motion for summary judgment from Gresham Apartments Investors that failed to comply with CRC, Rule 3.116 dealing with the submission of deposition testimony as an exhibit. The trial judge for that reason struck and, therefore, did not consider the deposition evidence that was submitted to oppose the motion. The trial judge, therefore, granted the motion and dismissed defendant Gresham Apartments Investors from the action. The appellate court said: "although the [trial] court did not expressly grant summary judgment because of the procedural default, it effectively did." Slip Op. 15. The loss was rectified when the appellate court reversed the judgment that had dismissed that defendant but said the dismissal occurred because Ross & Morrison did "something we would not expect most lawyers to do." Slip Op. 14.

The appeal from the loss of the summary judgment motion caused harm to plaintiffs. It delayed the trial for more than two years, and during that delay plaintiff Stephanie Garcia contracted COVID-19 and died. Because of her death, her estate was barred from recovering non-economic damages. CCP section 377.34. The jury likely would have awarded non-economic damages to her: it awarded economic damages to her estate. That the appellate court concluded the trial judge abused its discretion in striking plaintiffs' opposing evidence because their counsel failed to submit the evidence in a manner compliant with Rule 3.1116 does not change the fact that the trial court granted summary judgment against plaintiffs' claims against Gresham Apartments Investors because Ross & Morrison did not file a rule-compliant opposition.

Plaintiffs' motion provides no explanation for how the default occurred. There is no statement, for instance, that plaintiffs' counsel were familiar with and tried to follow Rule 3.116 for submitting deposition excerpts as exhibits to a summary judgment motion. Plaintiffs' motion, furthermore, does not discuss the impact that plaintiffs' counsel's failure should have on their claims for high end legal fees.

Plaintiffs' failure to address this issue is separately a reason to reduce the legal fees claimed by Messrs. Morrison and Ross in their fee motion.

The Court recognizes that the Court of Appeal reversed the trial judge. The Court, however, assumes that the trial judge would have denied the summary judgment had it been required to accept the deposition exhibits that were stricken. The loss of the motion ultimately did not deprive plaintiffs an opportunity to prosecute their claims against Gresham Apartments Investors, although it reduced the damages recoverable by the Stephanie Garcia estate and caused greater expense in the prosecution of plaintiffs' claims. Defendants should not bear the expense caused by the failure of plaintiffs' counsel to comply with CRC Rule 3.1116.

In the absence of any other benchmark, the Court will approve a lodestar attorney's fee for Messrs. Morrison and Ross of $735 per hour. This is the hourly rate that defense counsel, who testifies he specializes like Ross & Morrison in employment litigation, received in representing defendant Gresham Apartments Investors in this case. Mackey decl., para. 15.

**Findings re Plaintiffs' Fee Enhancement Claim:**

"[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted based on factors including as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. (Sorano III, supra, 20 Cal.3d at p.49.) The purpose of such adjustment is to fix a fee at the fair market value for the particular action." Ketchum v. Moses (2001) 34 Cal.4th 1122, 1132.

Only one of the four factors identified in the Ketchum decision is applicable to plaintiffs' fee motion.

The case did not present novel or difficult questions. The underlying facts for the wrongful termination claims were not disputed at trial. As the Court said in its written rulings denying defendants' post-trial motions: "Selzer-Doran Management manages 35 other apartment buildings, and, as a practice, employs couples to serve as resident managers in each apartment building, providing them with the use of an apartment during their employment as their principal compensation. Defendants argued that although Albert was an exemplary employee, no complaints ever having been received about him, the termination of the Garcias as employees and as tenants was justified because complaints had been received about Stephanie and defendants had concluded that her personality was not conducive to her duties in showing and renting vacant apartments." The principal issue at trial, given that defendants were

9

informed of Albert's medical condition, was whether defendants' reason for terminating the Garcias' employment and evicting them from their home was pretextual. This issue is not novel; it is the issue in FEHA termination cases. Presenting evidence on the issue was not uniquely difficult. Defendants had little documentation to support their contention that Stephanie's performance was deficient or that they had given notice to Stephanie that her performance as a rental manager was deficient. (The Court sustained Mr. Shegerian's immediate objection to defendants' attempt to introduce the vacancy rates in other Seltzer-Doren managed buildings because defendants had objected to plaintiffs' efforts before trial to obtain that information.) Whether Gresham Apartments Investors was liable for the termination decision made by its management agent Seltzer-Doren was potentially a significant issue but not one that required legal analysis at trial because the issue was decided before trial by the Court of Appeals.

Ross & Morrison did not find the need to take extensive factual discovery. The parties exchanged written discovery which is standard for an employment case. Ross & Morrison took four depositions, all of employees of defendants, and defended only the two depositions taken of the plaintiffs. The depositions taken after the matter was remanded back to the trial court were of each side's designated experts. The meager discovery supports the view that the case did not present novel or difficult issues.

The second factor—the skill displayed at trial—does not merit a fee enhancement. The skill of plaintiffs' lead trial counsel has earned for him a lodestar attorney's fee of $1,300 per hour. The trial team, as a unit, was effective in investigating and in presenting facts at trial to support plaintiffs' argument that they were subject to unlawful discrimination. Shegerian's examination of adverse witnesses was prepared, aggressive and focused, as needed in this case, but that would be expected from a $1,300 per hour lawyer. The lodestar fee rate establishes the presumptive market value for a lawyer's time. The Court finds no basis to go beyond that presumptive value in this case.

The Court disagrees with Mr. Nugyen's argument that the fact the jury returned a substantial verdict for the plaintiffs in itself establishes the verdict was produced by the skills of their lawyers. Reply 1: 14-16. The substantial verdict in this case derived from its facts: defendants expelled plaintiffs from their home and their employment because Albert Garcia required treatment and recuperation time for throat cancer and defendants argued their failure to accommodate Albert's medical condition with explanations that the jury, apparently, did not find credible.

This Court, when considering whether a multiplier to a lodestar is appropriate, is guided by our Supreme Court in its Ketchum decision:

> "[A] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting be unreasonable." 24 Cal 4th, supra, at 1139.

Applying that guidance to this case, the question is: did the Shegerian trial team obtain results that would not have been expected from another high-priced plaintiff's-side employment lawyer (say, Gary Dordick)? The fee motion provides no evidence to conclude that the quality of plaintiffs' trial lawyers "far exceeds" that would have been obtained by another lawyer of comparable skills.

Plaintiffs gesture to the third factor—that taking this case "precluded other employment"—but no facts are offered to support any such assertion. Shegerian states: "The trial in this case demanded that Plaintiff's counsel spend more than 10 hours per day on multiple days. Thus, this commitment had a dramatic ability of (sic) counsel's ability to accept work in other cases." Shegerian decl. para. 21. Mr. Shegerian offers no facts for his statement. Did his firm turn down other meritorious cases? The 10 hour work days occurred when Mr. Shegerian was trying this action, altogether nine days. The Garcia trial, moreover, occurred during the first month in which the LASC re-opened for civil jury trials. The fact that Shegerian does not identify any other trial for which he was committed (and which he could not continue to a future date) suggests his statement is formulaic and not based on fact. Ross & Morrison, the other law firm representing plaintiffs, do not say that their firm was precluded from representing other clients because of the demands of this case. Their time records do not indicate their commitment to this case precluded other legal work.

There is, in sum, no evidence that either Shegerian or Ross & Morrison rejected other cases because of their commitment to this case. There being no supporting facts, the Court disregards entirely the assertions that plaintiffs' counsel were precluded from other work because of the demands of this case.

The fourth factor—that counsel represented plaintiffs under a contingency contract—does merit a modest increase in the lodestar amount. The multiplier in a contingency case recognizes that there will be a delay, even in a successful case, in the payment of front-end legal fees and costs. There has been a delay, in this case, in payment to plaintiffs' counsel as legal fees, assuming that counsel would otherwise have been paid on a monthly basis. However, most of Shegerian & Associates' legal fees were incurred within the last ten months, substantially mitigating any burden due to a delay in payment. (The attorneys' fee award will draw 10 percent interest once entered in the

11

judgment.) The legal fees incurred by Ross & Morrison have accrued over four years, although two of those years can be attributed to their procedural default that resulted in a grant of summary judgment subsequently reversed on appeal. The high hourly fees claimed as lodestar rates by lawyers representing clients with FEHA claims suggest that those rates already include a contingency premium. Those high hourly rates claimed by attorneys in employment cases are attested to in plaintiffs' motion. Rowley decl., para. 9; Dordick decl., para. 9; Homampur decl., para. 15; and Mackey decl., paras. 15 and 16. As the Horsford decision states: "The contingency adjustment may be made at the lodestar phase of the court's calculation or by applying a multiplier to the noncontingency lodestar calculation (but not both)." 132 Cal.App.4th supra at 395.

Plaintiffs also make an argument that is beyond the analysis structure prescribed by controlling authority, namely that in establishing a fee enhancement the Court should award a high multiple because the Dow Jones Average has increased dramatically since when this case was filed. That argument is specious. The lodestar-plus-multiplier approach "anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." Ketchum v. Moses 24 Cal.4th supra at 1134. Investing after-tax earnings in the stock market is a bet on a roulette wheel; it does not provide an "objective determination" to recognize what a willing buyer and a willing seller will pay in a marketplace for legal services rendered on a noncontingent basis. The Court thinks less of plaintiffs' motion for making this fallacious argument.

The Court, after reviewing the factors pertinent to this case, shall award a 1.1 multiplier to the lodestar calculation.

Attorneys' Fee Award.

The attorneys' fee awarded to plaintiffs in this case is $1,263,133.95. That calculation of this amount is shown on Table C in the Appendix. The lodestar is to be multiplied by a 1.1 fee enhancement.

B. RULING ON DEFENDANTS' MOTION TO TAX COSTS

The Court has reviewed the motion but has not prepared a written tentative ruling.

BC699421 - TIME SHEET TABULATION
RE: MOTION FOR ATTORNEY FEES

[TABLE A]   ORIGINAL HOURS

| Attorney | Rate/hr | Exh. Total | Exh # | Table Total | HOURS BILLED BY YEAR | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2017 | 2018 | 2019 | 2020 | 2021 |
| Ross | $975.00 | 382.20 | #2 | 410.18 | 26.85 | 118.80 | 155.03 | 44.75 | 64.75 |
| Morrison | $975.00 | 529.00 | #1 | 529.20 | 2.45 | 146.69 | 252.01 | 79.29 | 48.76 |
| Shegerian | $1,300.00 | 195.70 | #3 | 195.70 | 0.00 | 2.60 | 0.60 | 0.30 | 192.20 |
| Nguyen | $1,000.00 | 180.10 | #4 | 181.10 | 0.00 | 5.00 | 7.10 | 0.80 | 168.20 |
| Lim | $700.00 | 279.90 | #5 | 278.70 | 0.00 | 0.00 | 24.60 | 7.90 | 246.20 |
| Reed | $850.00 | 15.80 | #8 | 15.80 | 0.00 | 0.00 | 15.50 | 0.00 | 0.30 |
| Lynch | $350.00 | 94.60 | #6 | 94.60 | 0.00 | 0.00 | 0.00 | 0.00 | 94.60 |
| McDonell | $1,000.00 | 9.90 | #7 | 9.90 | 0.00 | 0.00 | 0.00 | 0.00 | 9.90 |

TABLE B-1

| | EXH* | Conceded | Reduced | TOTAL |
|---|---|---|---|---|
| Ross | 382.20 | 4.90 | 16.58 | 360.72 |
| Morrison | 529.00 | 15.15 | 36.00 | 477.85 |
| Shegerian | 195.70 | 0.00 | 0.00 | 195.70 |
| Nguyen | 180.10 | 0.00 | 0.00 | 180.10 |
| Lim | 279.90 | 0.00 | 1.20 | 278.70 |
| Reed | 15.80 | 0.00 | 0.00 | 15.80 |
| Lynch | 94.60 | 0.00 | 0.00 | 94.60 |
| McDonell | 9.90 | 0.00 | 0.00 | 9.90 |

[TABLE B]   AMENDED HOURS

| Attorney | Rate/hr | Exh. Total | Exh # | Table Total | HOURS BILLED BY YEAR | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2017 | 2018 | 2019 | 2020 | 2021 |
| Ross | $975.00 | 360.72 | #2 | 410.18 | 26.85 | 115.55 | 153.68 | 44.45 | 28.75 |
| Morrison | $975.00 | 477.85 | #1 | 514.05 | 2.45 | 144.62 | 239.51 | 78.79 | 32.10 |
| Shegerian | $1,300.00 | 195.70 | #3 | 195.70 | 0.00 | 2.60 | 0.60 | 0.30 | 192.20 |
| Nguyen | $1,000.00 | 180.10 | #4 | 181.10 | 0.00 | 5.00 | 7.10 | 0.80 | 168.20 |
| Lim | $700.00 | 278.70 | #5 | 278.70 | 0.00 | 0.00 | 24.60 | 7.90 | 246.20 |
| Reed | $850.00 | 15.80 | #8 | 15.80 | 0.00 | 0.00 | 15.50 | 0.00 | 0.30 |
| Lynch | $350.00 | 94.60 | #6 | 94.60 | 0.00 | 0.00 | 0.00 | 0.00 | 94.60 |
| McDonell | $1,000.00 | 9.90 | #7 | 9.90 | 0.00 | 0.00 | 0.00 | 0.00 | 9.90 |

[TABLE C]   AMENDED HOURS & RATES

| Attorney | Rate/hr | HOURS | FEES | Table Total | FEES PER YEAR | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2017 | 2018 | 2019 | 2020 | 2021 |
| Ross | $735.00 | 360.72 | $265,129.20 | 0.00 | $19,734.75 | $84,929.25 | $112,954.80 | $32,670.75 | $21,131.25 |
| Morrison | $735.00 | 477.85 | $351,219.75 | 0.00 | $1,800.75 | $106,295.70 | $176,039.85 | $57,910.65 | $23,593.50 |
| Shegerian | $1,300.00 | 195.70 | $254,410.00 | 0.00 | $0.00 | $3,380.00 | $780.00 | $390.00 | $249,860.00 |
| Nguyen | $900.00 | 180.10 | $162,090.00 | 0.00 | $0.00 | $4,500.00 | $6,390.00 | $720.00 | $151,380.00 |
| Lim | $650.00 | 278.70 | $181,155.00 | 0.00 | $0.00 | $0.00 | $15,990.00 | $5,135.00 | $160,030.00 |
| Reed | $450.00 | 15.80 | $7,110.00 | 0.00 | $0.00 | $0.00 | $6,975.00 | $0.00 | $135.00 |
| Lynch | $350.00 | 94.60 | $33,110.00 | 0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $33,110.00 |
| McDonell | $900.00 | 9.90 | $8,910.00 | 0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $8,910.00 |

**$1,263,133.95**