1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (Bar No. 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (Bar No. 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

NICOLE JUAREZ ZELAYA, Individually and as Successor-in-Interest to Decedent JACOBO JUAREZ CEDILLO;

                    Plaintiff,

        v.

CITY OF LOS ANGELES; DUSTIN RICHMOND; JOSEPH HUNT,

                    Defendants.

Case No.: 2:20-cv-08382-ODW-MAA

*Assigned to:*
Hon. Otis D. Wright, II
Hon. Mag. Maria A. Audero

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE MOTION FOR REMITTITUR**

*[Declaration of Renee V. Masongsong and Exhibits thereto filed concurrently herewith]*

Date: January 8, 2024
Time: 1:30 p.m.
Courtroom: 5D

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS OF AUTHORITIES ..................................................1

I.   INTRODUCTION ..................................................................................................1

II.  LEGAL STANDARD ...........................................................................................2

III.  THERE WAS NO PREJUDICIAL MISCONDUCT WARRANTING A NEW TRIAL ................................................................................................................3

    A.  The Court Appropriately Examined Witnesses ...............................................3

IV.  DEFENDANTS ONLY OBJECTED TO THIS COURT'S QUESTIONING OF AND COMMENTS TOWARD MR. FLOSI, AND WAIVED ANY OTHER COMPLAINTS OF ALLEGED ERROR .....................................................................9

V.  THERE IS NO EVIDENCE OF PREJUDICE OR THAT THE JURY WOULD HAVE REACHED A DIFFERENT VERDICT ................................................10

    A.  The Evidence Overwhelmingly Supports the Verdict......................................11

    B.  The Law Permits the Court to Comment on the Evidence, and the Court's Comments Contained Within Its Questions Aligned with the Objective Evidence .14

    C.  Any Alleged Prejudice was Mitigated by the Appropriate Model Jury Instruction .......................................................................................................16

VI.  THE DAMAGES ARE NOT EXCESSIVE ........................................................16

    A.  The Wrongful Death Damages Are Not Excessive...........................................16

    B.  The Survival Damages Are Not Excessive. .....................................................18

VII.  DEFENDANTS WAIVED ANY RULE 50(E) CHALLENGE .........................20

VIII.  CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Daye v. Attorney General of New York*,
  712 F.2d 1566 (2d Cir. 1983) .................................................................... 9

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
  95 F.3d 1422 (9th Cir. 1996) ................................................................... 17

*Duckett v. Godinez*,
  67 F.3d 734 (9th Cir. 1995) .................................................................. 5, 7

*Faudee v. Iron City Sand & Gravel Co.*,
  315 F.2d 647 (3d Cir. 1963) .................................................................... 10

*Handgards, Inc. v. Ethicon, Inc.*,
  743 F.2d 1282 (9th Cir. 1984) ............................................................ 4, 15

*Hanson v. Waller*,
  888 F.2d 806 (11th Cir. 1989) ................................................................... 9

*Harper v. City of Los Angeles*,
  533 F.3d 1010 (9th Cir. 2008) ................................................................ 16

*Harris v. Steelweld Equipment Co., Inc.*,
  869 F.2d 396 (8th Cir. 1989) ..................................................................... 9

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) ..................................................................... 2

*Kennedy v. Los Angeles Police Dep't*,
  901 F.2d 702 (9th Cir. 1989) ............................................................ 2, 4, 5

*Lang v. Callahan*,
  788 F.2d 1416 (9th Cir. 1986) ................................................................. 14

*Maheu v. Hughes Tool Co.*,
  569 F.2d 459 (9th Cir. 1977) ..................................................................... 4

*Pau v. Yosemite Park and Curry Co.*,
  928 F.2d 880 (9th Cir. 1991) ..................................................................... 3

*Quercia v. United States*,
  289 U.S. 466 (1933) ................................................................................ 14

*Robinson v. United States*,
  401 F.2d 248 (9th Cir. 1968) ............................................................ 11, 15

*Rogers v. United States*,
  609 F.2d 1315 (9th Cir. 1979) ................................................................. 10

*Rush v. Smith*,
  56 F.3d 918 (8th Cir. 1995) ....................................................................... 9

*S.E.C. v. Levin*,
  849 F.3d 995 (11th Cir. 2017) ............................................................... 5, 9

*Shad v. Dean Witter Reynolds, Inc.*,
  799 F.2d 525 (9th Cir. 1986) ................................................................... 15

*Smith v. United States*,
  305 F.2d 197 (9th Cir. 1962) ............................................................... 3, 11

*Soto v. BorgWarner Morse TEC, Inc.*,
  239 Cal. App. 4th 165 (2015) ................................................................. 17

*Stillman v. Norfolk & W. Ry. Co.*,
  811 F.2d 834 (4th Cir. 1987) ..................................................................... 9

*Turner v. Burlington N. Santa Fe R. Co.*,
  338 F.3d 1058 (9th Cir. 2003) ................................................................. 19

*United States v. Allen*,
  431 F.2d 712 (9th Cir. 1970) ................................................................... 11

*United States v. Allsup*,
566 F.2d 68 (9th Cir. 1977)................................................................2

*United States v. Carrion*,
463 F.2d 704 (9th Cir. 1972)............................................................10

*United States v. Cruz*,
455 F.2d 184 (2nd Cir. 1972)...........................................................16

*United States v. D'Anna*,
450 F.2d 1201 (2nd Cir. 1971).........................................................16

*United States v. DeLuca*,
692 F.2d 1277 (9th Cir. 1982)............................................................2

*United States v. Jones*,
730 F.2d 593 (10th Cir. 1984).............................................................3

*United States v. Laurins*,
857 F.2d 529 (9th Cir. 1988)..............................................................2

*United States v. Malcolm*,
475 F.2d 420 (9th Cir. 1973)..............................................................2

*United States v. McDonald*,
576 F.2d 1350 (9th Cir. 1978).....................................................3, 5, 8

*United States v. Mostella*,
802 F.2d 358 (9th Cir. 1986).........................................................2, 15

*United States v. Nazzaro*,
472 F.2d 302 (2d Cir. 1973).............................................................16

*United States v. Nelson*,
570 F.2d 258 (8th Cir. 1978).............................................................10

*United States v. Poland*,
659 F.2d 884 (9th Cir. 1981).........................................................2, 15

*United States v. Sanchez–Lopez*,
879 F.2d 541 (9th Cir. 1989).............................................................14

*United States v. Source*,
308 F.2d 299 (4th Cir. 1962)..............................................................7

*United States v. Spawr Optical Research, Inc.*,
685 F.2d 1076 (9th Cir. 1982)..........................................................15

*United States v. Stover*,
329 F.3d 859 (D.C. Cir. 2003)............................................................7

*United States v. Swacker*,
628 F.2d 1250 (9th Cir. 1980)............................................................3

*United States v. Vega*,
589 F.2d 1147 (2d Cir. 1978)............................................................10

*Vergott v. Deseret Pharm. Co.*,
463 F.2d 12 (5th Cir. 1972)..............................................................10

*Wright v. City of Los Angeles*,
219 Cal. App. 3d 318 (Ct. App. 1990)................................................18

**Rules**

Federal Rules of Civil Procedure, Rule 51 ...........................................9
Federal Rules of Evidence, Rule 403 .................................................15
Federal Rules of Evidence, Rule 614 ................................................2, 9

## <u>MEMORANDUM OF POINTS OF AUTHORITIES</u>

### I.    <u>INTRODUCTION</u>

The Court should deny Defendants' Rule 59(a) motion for a new trial and Rule 59(e) motion to alter or amend the judgment.  There was no judicial misconduct and defendants cannot show any prejudice warranting a new trial.  The Court acted well within its discretion when it briefly examined witnesses, and the Court's comments were appropriately formulated as questions and were made to ensure that the evidence was not being mischaracterized.  There is no evidence that the jury would have returned a different verdict but for this Court's permissible participation in the trial, and any alleged claim of impartiality was addressed by this Court's issuance of the appropriate model jury instruction.

As discussed in detail below, the evidence at trial—including the videos, admissions by the defendant officers, and expert testimony on both sides—overwhelmingly supported the jury's verdict.  This includes evidence that: the decedent, Jacobo Cedillo ("Mr. Cedillo") was unarmed and had committed no crime; Mr. Cedillo did not injure or threaten to injure anyone; the officers had no probable cause to arrest Mr. Cedillo; Mr. Cedillo was compliant, offering his hands to be cuffed and walking over to the police car; Mr. Cedillo never tried to fight the officers before he was handcuffed; the officers took Mr. Cedillo to the ground when he was handcuffed and unable to break his fall; Mr. Cedillo's head struck the ground; Officers Hunt and Richmond were significantly larger and younger than Mr. Cedillo; Officers Hunt and Richmond restrained Mr. Cedillo in a prone position with their body weight and pressure on Mr. Cedillo's back and on the back of his legs during two periods of prone restraint; Mr. Cedillo was hobbled during the first period of prone restraint and remained hobbled during the second period of prone restraint; when the hobble was applied, Mr. Cedillo was not moving; the officers did not immediately roll Mr. Cedillo into a recovery position as directed by LAPD policy; placing someone in a recovery position on their side or seated upright allows the person to breathe easier.

Additionally, the jury's damages awards are in line with several recent verdicts in similar cases.  *See Murillo v. City of Los Angeles*, 2:21-cv-08738 FMO (awarding $12,000,000 in wrongful death damages and $11,800,000 in survival damages) and *Najera v. Ponder*, CV 18-762-DMG (awarding $10,000,000 in survival damages). Further, Defendants waived any complaints of error not preserved during trial.  For these reasons and the reasons that follow, Defendants' Rule 59(a) motion for a new trial and Rule 59(e) motion to alter or amend the judgment should be denied in their entireties.

## II.   LEGAL STANDARD

A district court "enjoys considerable discretion in granting or denying [a] motion [for new trial]." *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003). "The standard for reversing a verdict because of general judicial misconduct during trial is rather stringent." *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 709 (9th Cir. 1989), *overruled on other grounds*.  To sustain a claim of this kind, there must be an "extremely high level of interference" by the trial judge which creates "a pervasive climate of partiality and unfairness." *United States v. DeLuca*, 692 F.2d 1277, 1282 (9th Cir. 1982); *see also United States v. Laurins*, 857 F.2d 529, 537 (9th Cir. 1988) ("A judge's participation [in the trial] justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality.").

"The trial court may properly participate in the examination of witnesses for the purpose of 'clarifying the evidence, controlling the orderly presentation of the evidence, confining counsel to evidentiary rulings, and preventing undue repetition of testimony.'" *United States v. Malcolm*, 475 F.2d 420, 427 (9th Cir. 1973); *United States v. Mostella*, 802 F.2d 358, 361 (9th Cir. 1986) (same); *United States v. Poland*, 659 F.2d 884, 893 (9th Cir. 1981) (finding questions calculated to make testimony clearer to jury not improper); *United States v. Allsup,* 566 F.2d 68, 72 (9th Cir. 1977); Fed. R. Evid. 614(b) ("The Court may interrogate witnesses. . .").  Even "extensive

nonpartisan questioning, without more, does not require reversal." *Mostella*, 802 F.2d at 362 (citing *United States v. Swacker*, 628 F.2d 1250, 1254 (9th Cir. 1980)). As the Ninth Circuit stated in *Smith v. United States*, 305 F.2d 197, 205 (9th Cir. 1962):

> A federal trial judge, as has many times been said, is more than a moderator or umpire. He has the responsibility to preside in such a way as to promote a fair and expeditious development of the facts unincumbered by irrelevancies. He may assist the jury by commenting upon the evidence and this may include an appraisal of the credibility of witnesses, providing the comment is fair and the jury is clearly instructed that they are to find the facts and may disregard such comments.
>
> In fulfilling this responsibility during the stress of a . . . trial, few, if any judges can altogether avoid words or actions, inadvertent or otherwise, which seems inappropriate when later examined in the calm cloisters of the appellate court. But unless such misadventures so persistently pervade the trial or, considered individually or together, are of such magnitude that a courtroom climate unfair to the defendant is discernible [sic] from the cold record, the defendant is not sufficiently aggrieved to warrant a new trial.

*See also United States v. McDonald*, 576 F.2d 1350, 1358 (9th Cir. 1978) ("[T]he judicial role extends to examining witnesses to clarify the evidence and to controlling the trial and its participants so as to minimize confusion and delay while maximizing orderly, clear, and efficient presentation of evidence."); *United States v. Jones*, 730 F.2d 593, 598 (10th Cir. 1984) ("[A federal trial judge] should not hesitate to ask questions for the purpose of developing the facts; and it is no ground of complaint that the facts so developed may hurt or help one side or the other.").

## III. THERE WAS NO PREJUDICIAL MISCONDUCT WARRANTING A NEW TRIAL

### A. The Court Appropriately Examined Witnesses

"The standard for reversal on the basis of judicial misconduct in a civil trial is . . . quite high." *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 885 (9th Cir. 1991). So high, in fact, that Defendants' motion cites only a single Ninth Circuit case from 34 years ago granting a new trial on that basis, and Plaintiff's counsel was

unable to locate any others.  Even across the federal circuits, "[v]ery few cases outside of the criminal law area support an appellate finding of general judicial misconduct during trial."  *Kennedy*, 901 F.2d at 709; *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1289 (9th Cir. 1984).  Under this "rather stringent" standard, the Ninth Circuit has found no misconduct when a district court's questioning was "not marked by complete indifference," and some of its questions "instead were quite pointed and intemperate."  *Kennedy*, 901 F.2d at 709.  The *Kennedy* court distinguished a Fourth Circuit case where the court repeatedly impeded counsel's interrogation, assumed the role of witness as well as advocate, and misstated factual accounts.  The district court's intervention in *Kennedy*, by contrast, was prompted by a police officer's questionable testimony, "to which the court expressed understandable skepticism."  *Id.* at 710.  Importantly, the Ninth Circuit noted that the jury was instructed that the court's questions were not indicative of its feelings about the case, which "alleviated any appearance of impartiality the judge's questioning may have conveyed."  *Id.*  This case is similar to *Kennedy*.

Defendants' sole Ninth Circuit decision granting a new civil trial for judicial misconduct is *Maheu v. Hughes Tool Co.*, 569 F.2d 459 (9th Cir. 1977).  In that case, the plaintiff's credibility was "*the* crucial factor in the entire case," and he was "thoroughly and convincingly" impeached "by a mass of very persuasive evidence."  *Id.* at 471-72.  Inexplicably, however, the *Maheu* trial court made an impromptu speech to the jury immediately before it retired for deliberations.  *Id.* at 472.  The court ordered the speech, which attempted to vouch for the plaintiff's credibility and personal character, to be transcribed and included in the instructions booklet submitted to the jury.  *Id.*  The Ninth Circuit reversed because the court's "one-sided characterization" of the plaintiff essentially directed a verdict in his favor, thus denying the defendant a fair trial.  *Id.*  This case is not even remotely close to *Maheu*.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

### 1. The Court's Questioning of Edward Flosi Was Appropriate, and Mr. Flosi Testified that It Is Up to the Jury to Interpret the Video and Decide if the Force was Excessive.

The Court's questioning of Mr. Flosi's impartiality does not reflect that the Court was impartial.  The Court did not preempt counsel's function, and such questioning was within the discretion of the Court.  *See, e.g.*, *McDonald*, 576 F.2d at 1358; *Kennedy*, 901 F.2d at 709 (concluding that when a trial judge's questioning, including emphasizing a police officer's dubious testimony, filled only eight pages of a 400-page trial transcript, the "court [did not] dominate questioning of the witnesses so as to preempt counsel's function").  Further, a court's understandable skepticism of a witness's impartiality does not warrant a new trial.  *Kennedy*, 901 F.2d at 709; *Poland*, 659 F.2d at 894.

Here, the Court initially interrupted Mr. Flosi's testimony to appropriately direct Mr. Flosi to answer the pending question, after Mr. Flosi's non-responsive answer included facts not in evidence, such as speculation that the officers' conduct "would be" appropriate *if* Mr. Cedillo were resisting, trying to escape, or trying to injure, attack, spit at, bite, or kick the officers.  (Ex. 1, 576:7-24).  The Court appropriately told Mr. Flosi that the "question was really quite simple," and that the "question was the appropriateness of this particular action," not the appropriateness in a hypothetical situation not based on the facts of this case.  (*Id.*, 576:21-24).  The Court did not engage in any judicial misconduct by directing Mr. Flosi to answer the question based on the best evidence in this case—what is seen in the video.  (*Id.*, 577:2-3).  Mr. Flosi still refused to answer the Court's question.  (*Id.*, 577:14).  *See Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *S.E.C. v. Levin*, 849 F.3d 995, 1007-8 (11th Cir. 2017) (finding that the district court's questioning did not affect the fairness of the action where the witness was unresponsive to counsel's questions and the district court had to instruct the witness to answer questions directly).

Even without the Court's examination of Mr. Flosi's impartiality, the jury was made aware during Plaintiff's counsel's examination that Mr. Flosi is a retained expert paid by the City, who has opined in numerous cases against the City that LAPD officers did not use excessive force or restraint, even when the Board of Police Commissioners found the use of force to be out of policy. (*Id.*, 579:5-7, 580:13-18, 583:2-18). Mr. Flosi testified that in each of those cases alleging excessive force by LAPD officers, there was a police practices expert on the other side who had a differing opinion. (*Id.*, 581:14-17). Plaintiff's counsel, Mr. Galipo, also suggested to the jury during closing argument that the jury could find Mr. Flosi "not very credible because he seemed extremely biased in favor of the LAPD," whereas Plaintiff's police practices expert in this case does half his work when retained by plaintiffs, and half his work when retained by the defense. (*Id.*, 632:10-13). Plaintiff's counsel continued, "every single case [Mr. Flosi] does with the LAPD, including shooting cases and death cases and unarmed people shot in the back, he comes into court and says everything that the officers did is . . . fine." (*Id.*, 632:5-9). It would be pure speculation to conclude that the jury disregarded Mr. Flosi's testimony based on the Court's comments, when any reasonable jury would have seriously questioned Mr. Flosi's credibility based on Mr. Flosi's own testimony and the points made in Mr. Galipo's closing argument.

Additionally, the Court's questions to Mr. Flosi merely clarified the events seen in the videos to ensure the jury was not misled by a witness with "expert" qualifications. (Ex. 1, 597:7-10). Whereas Mr. Flosi's testimony distorted the events captured on the videos, the Court's questions reflected the obvious facts that were seen on the video, including: Mr. Cedillo volunteered his wrists to be handcuffed; Mr. Cedillo committed no crime, and the officers had no probable cause to arrest him; Mr. Cedillo made no verbal threats; Mr. Cedillo was compliant at least at the time when the officers walked him over to the police car, where the officers employed a wrist-lock pain compliance technique or control hold; Mr. Cedillo was unarmed; Mr.

Cedillo was barefoot; Mr. Cedillo was much smaller than Officers Hunt and Richmond; Mr. Cedillo was not spitting, kicking, or acting combative; Officers Hunt and Richmond placed pressure and their body weight on Mr. Cedillo's back and on the back of his legs; Mr. Cedillo was hobbled during the first period of prone restraint, and he was not moving when the hobble was applied. (*Id.*, pp. 597-601). The majority of these facts were also conceded by the officers at trial. (*See*, *e.g.*, Ex. 4, 126:9-21, 128:6-129:10, 131:19-132:12, 137:2-139:24; Ex. 2, 214:1-8, 214:22-215:24, 217:14-220:8, 225:1-21; 226:8-19).

Ultimately, Mr. Flosi testified that "with respect to the video and reasonable interpretations of the video, . . . the jury is going to decide what the video shows." (Ex. 1, 584:19-22). Mr. Flosi also agreed that the jury makes up its own mind, and that the jury decides whether the use of force was appropriate. (*Id.*, 583:19-584:3). The reasonable assumption is that the jury carefully watched the video, listened to the expert testimony, heard the admissions by the defendant officers during Mr. Galipo's examinations as clear from the record, and made up its own mind that the use of force was inappropriate. There is no reason to believe that the jury would have interpreted the video differently or decided that the use of force was appropriate but for the Court's appropriate clarification of the events seen on the videos.

### 2. The Court's Questioning of Officers Hunt and Cuba Was Proper

A trial judge may elicit the truth by examining witnesses. *See United States v. Stover*, 329 F.3d 859, 868-69 (D.C. Cir. 2003) (holding that the district court did not abuse its discretion in asking witness whether he told the truth and whether there was anything he wanted to change about his testimony, even if jurors interpreted judge's questions as endorsement of witness's credibility). "When a . . . witness gives unresponsive, evasive, or self-contradictory answers, the trial judge is not obliged to remain inert. It may become his duty to intervene." *United States v. Source*, 308 F.2d 299, 302 (4th Cir. 1962) (denying a motion for a new trial where the judge's questions

exposed the falsity of the defendant's testimony); *Duckett*, 67 F.3d at 740 ("Judge Goldman acted properly to clarify the evidence for the jury.  The fact that his questions may have permitted a witness to emphasize testimony helpful to the prosecution, or elicited answers detrimental to the defense, is not determinative."). One of the jury's functions is to determine credibility, as the jury was so instructed in this case.  (Ex. 4, 121:122:17).  In light of the video evidence in this case, the credibility of the officers was at issue.

Given the objective facts of this case, including that Mr. Cedillo was immediately handcuffed by two much larger officers, taken to the ground, hobbled, and restrained in a prone position for several minutes, it was not inappropriate for this Court to genuinely question Officer Hunt as to why it was necessary to use force and restraint against Mr. Cedillo, which provided Officer Hunt with an opportunity to further explain his conduct.  The Court did not interfere with defense counsel's examination of Officer Hunt.  After counsel's examinations, it was appropriate for this Court to ask Officer Hunt to clarify the point in the video at which Mr. Cedillo was being noncompliant.  (Ex. 2, 244:17-245:1-7).  It was also appropriate for the Court to ask Officer Hunt to clarify the purpose of the pain compliance technique, when Mr. Cedillo had committed no crime and was handcuffed, cooperative, and unarmed.  (Ex. 2, 245:16-246:15).

Officer Cuba's testimony that a "415 is a man that's posing a threat" was misleading.  (Ex. 3, 481:3-6).  It was therefore proper for the Court to further question Officer Cuba to elicit truthful testimony that a 415 call is simply a disturbance.  (*Id.*, 482:10-484:19).  Officer Cuba's testimony that the officers were telling Mr. Cedillo to relax to prevent him from "trying to fight" contradicted the video, which showed Mr. Cedillo on the ground, unarmed, handcuffed and hobbled, moaning in pain, and outnumbered by two larger officers.  (*Id.*, 485:2-22).  It was thus proper for the Court to intervene to ask Cuba to clarify his observations during the incident, including why the officers needed to restrain Mr. Cedillo at that time and what was causing Mr.

Cedillo to cry out.  (*Id.*, 486:18-23).  The Court's attempt to have an accurate record and ensure that the evidence was not mischaracterized certainly did not cross the line into judicial misconduct.  *See McDonald*, 576 F.2d at 1358 ("[A]lthough a few of the judge's remarks were sharp, even sarcastic, they do not represent an abuse of discretion that warrants a new trial."); *Daye v. Attorney General of New York*, 712 F.2d 1566, 1572 (2d Cir. 1983) (holding that the court's "hostile questioning of the defendant on two occasions" provided grounds for some apprehension but did "not pose risks of sufficient gravity to warrant a conclusion that fundamental fairness has been denied.").

## IV.   DEFENDANTS ONLY OBJECTED TO THIS COURT'S QUESTIONING OF AND COMMENTS TOWARD MR. FLOSI, AND WAIVED ANY OTHER COMPLAINTS OF ALLEGED ERROR

At trial, Defendants objected only to this Court's examination of and remarks toward Mr. Flosi, despite having every opportunity to object to the Court's questioning of other witnesses.  Therefore, Defendants have failed to preserve and waived any other complaints of alleged error, including with respect to this Court's questions of and comments toward Officers Hunt and Cuba, Defendants' comments on the video, and comments during Mr. Noble's testimony.  *See Harris v. Steelweld Equipment Co., Inc.*, 869 F.2d 396, 401–03 (8th Cir. 1989), *holding modified by Rush v. Smith*, 56 F.3d 918 (8th Cir. 1995) (holding that appellants did not object to the court's questions as required by Fed. R. Evid. 614(c) and, therefore, have waived any alleged complaint of error); *see* Fed. R. Civ. P. 51 (absent timely objection to failure to give instruction or improper instruction, scope of review limited to plain error). Regardless of the provision in Rule 614(c) that allows for parties to refrain from objecting to a judge's questioning of a witness in front of the jury so as to avoid prejudicing themselves, the rule "does not entirely relieve the litigant of his duty to object in order to preserve the exception on appeal."  *Levin*, 849 F.3d at 1007-8 (quoting *Hanson v. Waller*, 888 F.2d 806, 813 (11th Cir. 1989)).  An objection is

preserved only when lodged at the next available opportunity when the jury is not present; otherwise, the alleged error is deemed waived unless it constitutes plain error. *Id.*; *see also Stillman v. Norfolk & W. Ry. Co.*, 811 F.2d 834, 839 (4th Cir. 1987) ("If a party fails to object to the court's interrogation of a witness at trial, his objection will not be reviewed on appeal."); *United States v. Vega*, 589 F.2d 1147, 1152–53 (2d Cir. 1978) (same); *Faudee v. Iron City Sand & Gravel Co.*, 315 F.2d 647, 651-52 (3d Cir. 1963); *Vergott v. Deseret Pharm. Co.*, 463 F.2d 12, 17 (5th Cir. 1972).

## V.   THERE IS NO EVIDENCE OF PREJUDICE OR THAT THE JURY WOULD HAVE REACHED A DIFFERENT VERDICT

There is no evidence that this Court's participation in the trial resulted in prejudice warranting a new trial. *See Rogers v. United States*, 609 F.2d 1315 (9th Cir. 1979) (where no prejudice to the defendant results, no reversible error has occurred). First, Defendants have not—and cannot—show any specific evidence that the jury would have reached a different verdict but for this Court's remarks, questioning, or other participation in the trial. Second, the objective evidence at trial overwhelmingly supports a verdict in Plaintiff's favor. *See United States v. Nelson*, 570 F.2d 258 (8th Cir. 1978) (holding that "[u]nder all circumstances including strong evidence of defendant's guilt, any error which may have been committed by district court in connection with questions which court put to defendant or comments which court made on the evidence was not prejudicial to defendant."). Third, this Court's remarks comported with the objective evidence in the case, whereas the testimony by Defendants and their witnesses contradicted the video evidence and was misleading. Fourth, this Court instructed the jury to make its own decision.

In *United States v. Carrion*, 463 F.2d 704, 709 (9th Cir. 1972), the Ninth Circuit denied a request for a new trial even though "the judge's remarks were unquestionably improper." The *Carrion* court could not hold that "the result of those unfortunate remarks was the creation of an atmosphere so prejudicial as to prevent

[the defendant] from receiving his constitutionally guaranteed fair trial." *Id*.  In *Smith*, the Ninth Circuit rejected arguments that the trial court "erred throughout the trial in unnecessarily taking an active part in the prosecution, interfering with the examination of witnesses, questioning and commenting in such a way as to show a hostile attitude toward appellants and their defense, giving instructions which unfairly commented upon the evidence."  305 F.2d at 205.  In reviewing the entire lower court record, *Smith* concluded that the "judge did not participate in the proceedings in such a way as to deprive appellants of a fair trial by jury."  Similarly, here, even assuming *arguendo* that this Court's intervention could be construed as displaying a "hostile" attitude toward the defense or appearing favorable to Plaintiff's theory of the case, Defendants were not deprived of a fair trial.

In *Robinson v. United States*, 401 F.2d 248, 252 (9th Cir. 1968), defendants alleged that the "trial judge erred in its extensive participation in the examination of witnesses . . . to the prejudice of appellant."  Despite the *Robinson* court's finding that "it might have been . . . better if the judge had refrained from interposing with questions, or had interposed later or had terminated his participation earlier," the Ninth Circuit reiterated that "the trial judge has a wide discretion in his management of the trial" and concluded that nothing in the record "could have impaired the defendant's right to a fair trial."  401 F.2d at 252.  The *Robinson* court noted that the trial judge in that case "did not even approach the outer limits of the discretion permissible under the language [in *Smith*]."  401 F.2d at 252 (citing *Smith*, 305 F.2d 197).  As in *Robinson*, this Court's remarks, questions, and other participation here fall within this Court's permissible discretion in managing the trial.

## A. <u>The Evidence Overwhelmingly Supports the Verdict</u>

There is no basis for concluding that the jury would have returned a different verdict but for this Court's participation in the trial.  In *United States v. Allen*, 431 F.2d 712, 713 (9th Cir. 1970), the Ninth Circuit disagreed that the trial judge "overstepped the bounds of propriety."  The *Allen* court held in the alternative:

"[E]ven if it could be said that the several comments, considered as a whole, constituted error, the error could not have operated so as to prejudice, significantly, the rights of the accused.  The evidence of his guilt was overwhelming."  This Court should likewise find that any alleged error could not have significantly prejudiced Defendants' right to a fair trial, because the evidence of Defendants' liability was so overwhelming and indisputable.

Officers Hunt's and Richmond's conduct toward Mr. Cedillo was egregious, as evident from the videos, the defendant officers' own admissions, and the objective facts elicited from both police practices experts.  (*See, e.g.*, Ex. 1, 585:7-587:16, 589:6-590:7; Ex. 2, 214:1-215:24, 217:14-220:8, 225:1-226:8-19, 302:21-306:13, 314:10-316:21, 319:5-17; Ex. 4, pp. 126 -139).  Any reasonable juror who watched the videos of Officers Hunt and Richmond with their full body weight on Mr. Cedillo's back and back of his legs for several minutes when Mr. Cedillo was handcuffed and hobbled would conclude that the officers used excessive force and restraint against Mr. Cedillo.  Some of this overwhelming evidence, which Mr. Galipo summarized during his closing argument (Ex. 1, 629 – 642) includes the following:

There was no call for service or reported crime relative to this incident, and the officers admitted they had no probable cause to arrest Mr. Cedillo.  (Ex. 1, 629:15-630:8; Ex. 4, 128:16-18).  Mr. Cedillo was unarmed, and the officers never saw anything that looked like a weapon on Mr. Cedillo's person.  (Ex. 4, 131:19-132:2).  The officers had no information that Mr. Cedillo had injured or threatened to injure anyone.  (*Id.*, 132:5-12).  When Officers Hunt and Richmond contacted Mr. Cedillo, he was sitting in the driveway of a gas station, and he needed some help.  Mr. Cedillo was cooperative and compliant.  He offered his wrists to be handcuffed and walked over to the police car.  He told the officers that he was homeless and wanted to go to work, and he asked about his shoes that were left behind.  (Ex. 1, 630:9-13).  Mr. Cedillo never tried to fight the officers before he was handcuffed.  (*Id.*, 589:8-18).

The officers lifted his cuffed hands behind his back, causing him to scream out in pain. (*Id.*, 631:1-3).  The officers forcefully took him to the ground while he was handcuffed.  During takedown, Mr. Cedillo hit his head on the pavement because he was handcuffed and unable to break his fall.  (Ex. 1, 631:6-13; Ex. 4, 133:23-134:13).  Mr. Cedillo suffered a head injury when his head hit the ground, which was a contributing factor to his death.  (Ex. 3, 398:7-399:25).  The officers were significantly larger and younger than Mr. Cedillo, and Mr. Cedillo was outnumbered by the numerous officers on scene.  At the time of the incident, Hunt was 27 years old, 6' 3" and 210 lbs., and Richmond was 6' 4" and 250 lbs., whereas Mr. Cedillo was 50 years old, 5' 3" tall, and 146 lbs. (Ex. 1, 629:11-14, 630:14-18).  Mr. Cedillo never injured or kicked any officers during this incident.  (Ex. 4, 149:13-15; Ex. 2, 217-220:8).  Mr. Cedillo was restrained for approximately four minutes during the first period of prone restraint and restrained for approximately three minutes during the second period of prone restraint.  (Ex. 1, 586:21-587:13, 590:2-7).

Mr. Cedillo's ankles were hobbled during the first prone restraint and remained hobbled during the second prone restraint.  Officer Tadeh Menasakanian testified that when he arrived on scene, he encountered Officers Richmond and Hunt on top of Mr. Cedillo, and he was instructed to place a hobble on Mr. Cedillo.  (Ex. 2, 250:11-18).  Officer Menasakanian testified that when he placed the hobble on Mr. Cedillo, Mr. Cedillo was not moving.  (*Id.*, 250:19-25).  Officer Menasakanian further testified that after he hobbled Mr. Cedillo, Officers Hunt and Richmond continued to restrain Mr. Cedillo in a prone position for approximately two more minutes during the first period of prone restraint.  (*Id.*, 252:3-8).  During those approximately two minutes, Officer Menasakanian never saw Mr. Cedillo move.  (*Id.*, 252:13-16).

The LAPD's policy on hobble restraints was introduced at trial, and the evidence showed that the officers violated this policy.  (Ex. 4, 140:9-25, 142:15-143:25; Ex. 11)  The policy states that once an officer places a handcuffed subject in a hobble, the officer must immediately place that subject in a recovery position, such

as sitting the person up or placing them on their side.  (Ex. 2, 251:1-11; Ex. 11).
Contrary to the directive, Officers Hunt and Richmond did not immediately place Mr.
Cedillo into a recovery position or direct that he be placed in a recovery position.  (Ex.
2, 251:20-252:12; Ex. 4, 167:19-22).  After Mr. Cedillo was awakened by an EMT,
Officers Hunt and Richmond placed the still-hobbled Mr. Cedillo back into a prone
position and continued to place weight and downward pressure to Mr. Cedillo's back
and back of his legs.  (Ex. 2, 253:1-254:7; Ex. 4, 149:16-152:2).

The jury also heard testimony from Plaintiff's expert Jeff Noble that basic
police training teaches officers that as soon as a subject is handcuffed, they must be
rolled onto their side or sat up in order to facilitate their breathing.  (Ex. 2, 307:20-
308:25).  After listening to all the evidence, the jury found that the City failed to
adequately train its officers with respect to the risks of prone restraint and/or restraint
asphyxia.  (Dkt. 121).  Notably, this Court did not make any remarks or posed any
questions to witnesses regarding the City's training, and yet the jury still reached this
conclusion.

**B. <u>The Law Permits the Court to Comment on the Evidence, and the Court's Comments Contained Within Its Questions Aligned with the Objective Evidence</u>**

"The law of the United States permits the judge to comment to the jury on the
evidence in the case.  Such comments are only expressions of the judge's opinion of
the facts and the jury may disregard them entirely since the jurors are the sole judges
of the facts." *United States v. Sanchez–Lopez*, 879 F.2d 541, 553 (9th Cir. 1989)
(citing *Quercia v. United State*s, 289 U.S. 466, 469 (1933) (a judge may comment
upon evidence and express an opinion on the facts so long as the judge makes it clear
to the jury that all matters of fact are submitted for their determination)).  Expressions
of disgust at the brutality of a crime by the trial court have been found not to violate
the right to an impartial tribunal.  *See, e.g.*, *Lang v. Callahan*, 788 F.2d 1416, 1418
(9th Cir. 1986).  Here, the Court did not commit misconduct by commenting on the

video evidence.  Ultimately, the trier of fact considered the video evidence, the expert testimony, and the admissions by the defendant officers and decided the merits of the case based on all the evidence presented.

Defendants take issue with the Court's reaction to the videos of the incident.  It would be difficult to ask anyone to have a different reaction to viewing them.  Indeed, the video displayed Mr. Cedillo's desperate cries in pain and last breaths.  By their nature, cases involving allegations of excessive force contain evidence that may be difficult for any reasonably compassionate person to view.  "Trial judges are human beings who are unique in their temperaments and intellectual qualities, and it is, of course impossible to man the benches with judges each of whom would fit into a common mold." *Robinson*, 401 F.2d at 252.  The Court's human reaction to the video, including asking that it be stopped and not played cumulatively, does not constitute judicial misconduct.  Rather, it falls squarely within the bounds of the Court's discretion to manage an orderly trial, including ensuring that evidence, particularly graphic and disturbing evidence, is not cumulatively introduced.  *See* Fed. R. Evid. 403.  The Court's request that the video not be overplayed is no different than a trial judge ordering that a video of a decedent bleeding to death after a shooting be played only enough to substantiate survival damages.

Likewise, the Court's displeasure at defense counsel's attempts to mischaracterize the evidence regarding alleged "combativeness" of Mr. Cedillo when posing hypothetical questions to Plaintiff's expert Jeff Noble, which were improper and likely to cause jury confusion, did not amount to prejudicial misconduct.  *See Poland*, 659 F.2d at 894 (determining that the trial court's impatience with the defense, including through displays of irritation and sarcasm, while inappropriate, was not prejudicial).  It is not uncommon for courts to require hypothetical questions to be based on the facts of the case.

C. **Any Alleged Prejudice was Mitigated by the Appropriate Model Jury Instruction**

Even if there was judicial misconduct, which Plaintiff contends there was not, a new trial is not warranted unless the defendant is "actually prejudiced" by the misconduct. *United States v. Spawr Optical Research, Inc.,* 685 F.2d 1076, 1082 (9th Cir. 1982); *see also Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525 (9th Cir. 1986); *Handgards*, 743 F.2d at 1289. Here, Defendants cannot show prejudice. There is no evidence that the jury would have reached a different conclusion but for the Court's comments and questions. In *Mostella*, *supra*, the Ninth Circuit noted that the trial judge's "extensive questioning" of experts, which interrupted counsel's examination, "while probably excessive" did not warrant a new trial, particularly because "the court expressly cautioned the jury not to infer from any of its questions that it had any views regarding the credibility of the witnesses or the guilt or innocence of the defendants." 802 F.2d at 362.

Any "damaging impression may be mitigated by a jury instruction which emphasizes that "comments or questions by the court [are] not to be construed as in any way expressing any opinion or view on the part of the court." *United States v. Nazzaro*, 472 F.2d 302, 312-13 (2d Cir. 1973); *see also United States v. Cruz*, 455 F.2d 184, 185 (2nd Cir. 1972); *United States v. D'Anna*, 450 F.2d 1201, 1206 (2nd Cir. 1971). In this case, the jury was properly instructed not to "read into" "anything [the Court] may say or do, that [the Court] ha[s] an opinion regarding the evidence or what your verdict should be." (Ex. 1, 614:8-10; Dkt. 119, pp. 2, 23; Ninth Cir. Nos. 1.3, 1.4). It is presumed that the jury followed the Court's instructions, and nothing here suggests otherwise.

VI. **THE DAMAGES ARE NOT EXCESSIVE**

A. **The Wrongful Death Damages Are Not Excessive**

Despite Defendants' contentions, Plaintiff Nicole Zelaya's testimony provides ample support for the jury's award of $1,500,000 in wrongful death damages. *See*

*Harper v. City of Los Angeles*, 533 F.3d 1010, 1029 (9th Cir. 2008) (holding that testimony of the plaintiff alone can substantiate a jury's damages award).  Plaintiff testified that she felt loved by her father, Mr. Cedillo, and that she spoke to him on the phone weekly up until the time of his death.  (Ex. 2, 352:17, 353:23-24).  Plaintiff further testified that her father encouraged her from a young age to go to college, that he prayed for her protection, peace, and joy, that he reminded her to be a good person and try her best in all she did.  (*Id.*, 352:17-25).  Mr. Cedillo told Plaintiff that he was proud of her.  (*Id.*, 354:2-4).  Plaintiff sent Mr. Cedillo photos and told him about her extracurricular activities and other life events.  (*Id.*, 355:9-14).  Plaintiff testified that she dreamed of having Mr. Cedillo attend her future wedding, a dream that was taken away from her with her father's untimely death.  (*Id.*, 359:15-25).  There is no question from Plaintiff's testimony that she suffered a considerable loss of Mr. Cedillo's love, companionship, comfort, care, assistance, protection, affection, society, and moral support contemplated by CACI 3921, which was given in this case.  (Ex. 1, 622:3-25).

Juries have found significantly higher wrongful death damages in several recent cases.  A Court may "consider amounts awarded in similar cases," though "in the final analysis, the question in each case must be determined from its own peculiar facts." *Soto v. BorgWarner Morse TEC, Inc.*, 239 Cal. App. 4th 165, 199 (2015).   Less than two months prior to the verdict in the instant case, on August 25, 2023, at the same courthouse, a jury in the police misconduct case *Murillo v. City of Los Angeles*, 2:21-cv-08738 FMO, awarded $12,000,000 in wrongful death damages to one plaintiff, which is eight times more than the wrongful death damages in this case.  (Ex. 7).  In *Archibald v. County of San Bernardino*, 5:16-cv-01128-AB-SP (2018), the jury awarded the decedent's parents a total of $8,500,000 in wrongful death damages for the loss of their adult son.  (Ex. 5).  In *Alves v. Riverside County, et al.*, 5:19-CV-02083-JGB (2023), the jury awarded $7,500,000 in wrongful death damages to the decedent's sister.  (Ex. 9).  If a reasonable jury can award $7,500,000 to a decedent's

sibling, then certainly a reasonable jury can award $1,500,000 to a daughter who loses
a parent.  In *Dajyne G., et al. v. Culver City*, CV 10-09497-MWF (2010), the jury
awarded a total of $8,000,000 in wrongful death damages among the decedent's four
children.  (Ex. 6).

A wrongful death damages verdict of $1,500,000 is not "grossly excessive or
monstrous."  *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422,
1435 (9th Cir. 1996).  Indeed, Mr. Galipo suggested to the jury that the wrongful
death damages in this case should be between $8,000,000 and $10,000,000, and yet
the jury awarded only $1,500,000.  (Ex. 1, 652:7-10). The court's power to curtail
excessive damages exists only when the facts are such where the excess appears as a
matter of law.  *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 354 (Ct. App.
1990).  The mere fact that a judgment is large does not validate the losing party's
claim that the verdict is the result of judicial misconduct.  *Id.*  If the jury's verdict is
supported by substantial evidence, it must be upheld.  *Id.*

### B. The Survival Damages Are Not Excessive.

The jury's verdict of $12,000,000 in survival damages is not excessive as a
matter of law.  Less than two months prior to the verdict in this case, the jury in
*Murillo v. City of Los Angeles*, 2:21-cv-08738 FMO, awarded $5,300,000 for Jesse
Murillo's loss of life and $6,500,000 for his pre-death pain and suffering.  (Ex. 7).
Neither the $11,800,000 survival damage award in *Murillo* nor the $12,000,000
survival damage award here was excessive.  Rather, these damages reflect the current
public perception of the monetary value of a lost life and pre-death suffering in this
particular geographic location in 2023 for these particular decedents.  The survival
damages here are specifically supported by the length of time that Mr. Cedillo endured
pain and suffering, as contemplated by the appropriate jury instruction.  (Ex. 1,
622:15-16).  During the trial, the jury heard evidence not only that Mr. Cedillo
endured extreme pain and suffering during the approximate 30-minute incident, but
also that he survived for approximately five days after the incident, until he was taken

off life support.  (Ex. 3, 395:8-396:25, 413:4-8; Ex. 1, 642:15-17, 648:1-7, 650:11-13).  During closing argument, Mr. Galipo asked the jury to award $20,000,000 in survival damages, and the jury awarded significantly less.  (Ex. 1, 650:22-25).

Other recent verdicts are also instructive.  On April 26, 2023, in the police shooting case *Najera v. Ponder*, CV 18-762-DMG, a jury at the First Street U.S. Courthouse awarded $10,000,000 in survival damages for the death of a 32-year-old semi-homeless laborer.  (Ex. 8).  In 2018, a jury in Riverside County awarded $7,000,000 for 29-year-old Pickett's pre-death pain and suffering and loss of life in the case *Archibald*, *supra*, even when presented with evidence that the decedent was mentally ill and living in a motel.  (Ex. 4).  In *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1101 (9th Cir. 2021), the Ninth Circuit clearly held that California's prohibition on loss of life damages is inconsistent with §1983.  *See also Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014).  In 2019, the jury in *Valenzuela* awarded $3,600,000 in damages for the decedent's loss of life and $6,000,000 for his pre-death pain and suffering.  *Id*. at 1103; (Ex. 10).  On appeal, the Ninth Circuit rejected the defendants' argument that "[e]ven if Valenzuela's family could not recover the $3.6 million loss of life award, they would still receive $9.6 million in pre-death pain and suffering and wrongful death damages" and held that a loss of life award addresses a separate injury.  *Id*.  The *Valenzuela* court also rejected the defendants' contention that the loss of life damages were too speculative, holding that it is "better for juries to decide whether a plaintiff has received sufficient compensation."  *Id*.

Given these significantly higher damages awards in recent similar cases, particularly when adjusting for inflation, this Court should not disturb the jury's verdicts of $1,500,000 in wrongful death damages and $12,000,000 in survival damages, as neither was excessive.  Defendants' assertion that the jury's damages verdicts were influenced by this Court's remarks is unpersuasive, as this Court never commented on the damages or suggested any monetary amounts to the jury.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

## VII.   **DEFENDANTS WAIVED ANY RULE 50(E) CHALLENGE**

"There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law. *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). Defendants make no attempt to argue that any of these grounds apply, and therefore waived any Rule 50(e) challenge.

## VIII.  **CONCLUSION**

For the reasons stated above, the Court should deny Defendant's motion.

Dated:  December 18, 2023          **LAW OFFICES OF DALE K. GALIPO**
**CARRILLO LAW FIRM, LLP**


By: _____ *s/ Dale K. Galipo* _____
         Dale K. Galipo
         Michael Carrillo
         Renee V. Masongsong
         *Attorneys for Plaintiffs*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff certifies that this brief contains 6833 words, which complies with the word limit of L.R. 11-6.1.

DATED: December 18, 2023          **LAW OFFICES OF DALE K. GALIPO**

By: _____*s/ Renee V. Masongsong*_____
Dale K. Galipo
Renee V. Masongsong
*Attorneys for Plaintiffs*